856 A.2d 43

Clyde E. CHRISTY, Administrator of the Estate of Anne K. Christy, and Clyde E. Christy, Individually, Appellees

v.

CRANBERRY VOLUNTEER AMBULANCE CORPS, INC. and Louis Liberto, Appellants.

Supreme Court of Pennsylvania.

Argued March 3, 2004.

Decided Aug. 16, 2004.

Mary Elizabeth Dixon, Philadelphia, for Cranberry Volunteer Ambulance et al.

Michael A. Murphy, Philip A. Ignelzi, Pittsburgh, for Clyde E. Christy.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice NEWMAN.

In this case, we are asked to determine whether a volunteer ambulance company is entitled to the benefit of local government immunity pursuant to the Political Subdivision Tort Claims Act (Tort Claims Act) when furnishing the same emergency medical services that an immune volunteer fire company provides. For the reasons that follow, we vacate the Order of the Commonwealth Court and remand the matter for the parties to introduce evidence regarding whether the ambulance company is a "local agency," pursuant to our analysis in *Sphere Drake Insurance Company v. Philadelphia Gas Works*, 566 Pa. 541, 782 A.2d 510 (2001).

## FACTS AND PROCEDURAL HISTORY

Appellee Clyde E. Christy (Christy), the president of Cranberry Volunteer Ambulance Corps, Inc. (Cranberry Ambulance), a Pennsylvania non-profit corporation,[1] attended the company's annual picnic on August 28, 1994, at Knob Hill Community Park in Marshall Township, Allegheny County. Many of the Cranberry Ambulance employees attended the

---

1. The record does not contain the articles of incorporation of Cranberry Ambulance. However, in response to ¶ 3 of Christy's Complaint in Civil Action, which alleged that Cranberry Ambulance is a "non-profit corporation organized and existing under the laws of Pennsylvania," Cranberry Ambulance admitted that status at ¶ 1 of its Answer and New Matter. (Reproduced Record (RR) at 11a and 24a).

picnic, although some of them, including Louis Liberto (Liberto), a paid staff paramedic with Cranberry Ambulance, remained on duty back at the station. During the picnic, Christy began to experience symptoms of a heart attack. Sallie Bailey (Bailey), a friend of Christy's who was also an attendee and a volunteer paramedic with Cranberry Ambulance, assisted Christy and telephoned the station to summon an ambulance. Bailey waited with Christy and rendered assistance. Liberto and Julie Wilson (Wilson), a volunteer emergency medical technician (EMT), responded to the call and arrived at the scene to render aid. Christy was moved by stretcher to the ambulance and then transported to North Hills Passavant Hospital (Hospital). Wilson drove the ambulance, and Liberto rode in the back to care for Christy. Bailey rode along in the back of the ambulance to continue to care for Christy, despite Liberto's protests that her presence was unnecessary.[2]

En route, Liberto administered oxygen to Christy and assessed his condition. Bailey argued with Liberto and wanted to administer nitroglycerine (NTG).[3] Liberto contacted the Hospital medic command for instructions. The Hospital physician ordered Liberto to administer the NTG, which Liberto did not do.[4] Because he feared further confrontation with Bailey, Liberto told her that he did not receive any orders. Liberto maintained Christy on basic life support during the thirty-minute ride to the Hospital and never administered the NTG. Christy's experts testified that Christy suffered a "very large myocardial infarction," causing a permanent loss of one-

2. The record showed that there was tension and friction between Liberto and Bailey during the ambulance transport. According to Liberto, Bailey kept interfering with his questioning of Christy, complaining that he was "wasting time," and demanding the key to his drug box. Brief of Appellants at 8.

3. Bailey testified that the protocol for chest pain was the administration of NTG and that the NTG was kept in the drug box. (RR at 56a–72a).

4. The Commonwealth Court incorrectly stated that Liberto "was told to administer NTG if Christy's chest pain increased." Commonwealth Court Opinion at 2. However, the trial court found that the medic command physician unequivocally ordered Liberto to administer the NTG, and Liberto violated that order. Trial Court Opinion at 2.

third of his heart function. (RR at 282a). Medical evidence suggested that NTG would have relieved his chest pain and reduced the severity of his heart attack. Christy, who was thirty-seven years old at the time of his heart attack, survived. Medical testimony established that at the time of the incident, Christy had the arteries of a seventy-year old man, that there was a history of cardiac disease in his family, including his father's death from cardiac disease at age thirty, and that Christy had smoked two packs of cigarettes a day since he was a teenager. (RR at 1119a).

Christy filed an action for damages against Liberto and Cranberry Ambulance (collectively, Appellants) on July 25, 1996, in the Court of Common Pleas of Allegheny County (trial court), claiming that: (1) Liberto was grossly negligent in refusing to administer the NTG; and (2) Cranberry Ambulance was vicariously liable for the negligent conduct of Bailey and/or Liberto in the ambulance. Christy's wife, Anne K. Christy, also brought a claim against Appellants for loss of consortium.[5] Cranberry Ambulance asserted that Christy's claims were barred by the liability provisions of the Emergency Medical Services Act (EMSA),[6] as set forth at 35 P.S. § 6931(j)(2), which provides:

**j. Liability.—**

(2) No first responder, emergency medical technician or EMT-paramedic or health professional who in good faith attempts to render or facilitate emergency medical care authorized by this act shall be liable for civil damages as a result of any acts or omissions, unless guilty of gross or willful negligence. This provision shall apply to students enrolled in approved courses of instruction and supervised pursuant to rules and regulations.

35 P.S. § 6931(j)(2).

At the conclusion of the first trial, the jury returned a verdict in favor of Appellants and against Christy on all claims. Christy filed a Motion for Post–Trial Relief, seeking a

5. Anne K. Christy has since died. (RR at 237a).

6. Act of July 3, 1985, P.L. 164, *as amended*, 35 P.S. §§ 6921, *et seq.*

new trial because of alleged prejudicial statements made by Liberto and Cranberry Ambulance's former counsel. The trial court granted the Motion, vacating the verdict and ordering a new trial. In an Order dated January 12, 2000, the Commonwealth Court affirmed the Order of the trial court.[7] We denied a subsequent request for allocatur.

When the matter was retried in September of 2001, the trial court instructed the jury that as a matter of law Bailey acted as an agent of Cranberry Ambulance and that the company was vicariously liable for her actions if the jury found her conduct constituted gross negligence. The court instructed the jury to state separately whether Liberto was grossly negligent and whether Cranberry Ambulance, acting through its agents Liberto and/or Bailey, was grossly negligent. The jury answered "yes" to both questions. Christy then requested a charge on punitive damages, which the trial court refused. The jury found against Appellants and in favor of Christy in the amount of $200,000.00, and against Appellants and in favor of Christy, as administrator of the estate of his wife, in the amount of $50,000.00. The trial court subsequently molded the verdict to include delay damages and entered judgment on the molded verdict.

Christy appealed the denial of punitive damages to the Commonwealth Court; Liberto and Cranberry Ambulance cross-appealed, arguing that they were immune from liability as a local agency under the Tort Claims Act.[8] Citing to its earlier decision in *Scrima v. Swissvale Area Emergency Service,* 143 Pa.Cmwlth. 500, 599 A.2d 301 (1991), the Commonwealth Court found that Cranberry Ambulance was not immune from liability as a local agency under the Tort Claims Act because immunity of a volunteer ambulance company is governed not by that Act but by the EMSA. Accordingly, the Commonwealth Court affirmed that portion of the trial court Order that found that Cranberry Ambulance did not have immunity. *Cranberry Volunteer Ambulance Corps, Inc. v.*

7. *Christy v. Cranberry Volunteer Ambulance Corps, Inc.,* (Pa.Cmwlth., No. 984 C.D.1999, filed January 12, 2000) (unpublished memorandum).

8. 42 Pa.C.S. §§ 8541, *et seq.*

*Christy,* Pa.Cmwlth., No. 1357 C.D. 2002, 822 A.2d 893 (2003) (unpublished memorandum).

On November 12, 2003, we granted allocatur to consider whether the Commonwealth Court erred by: (1) holding that Cranberry Ambulance is not immune under the Tort Claims Act when it performs the exact same emergency medical services as an immune volunteer fire company; and (2) not remanding the matter to the trial court, following the post-verdict decision of our Court in *Sphere Drake. Christy v. Cranberry Volunteer Ambulance Corps, Inc.,* 575 Pa. 704, 837 A.2d 1179 (2003).

## DISCUSSION

### *Tort Claims Act Immunity*

■ We must decide whether Cranberry Ambulance is immune under the Tort Claims Act as a question of law; therefore, our standard of review is *de novo,* and our scope of review is plenary. *Southeastern Pennsylvania Transportation Authority v. Board of Revision of Taxes,* 574 Pa. 707, 833 A.2d 710 (2003) (citing *Buffalo Twp. v. Jones,* 571 Pa. 637, 813 A.2d 659, 664 n. 4 (2002)). The question we address is purely legal, and our review does not encompass the merits of the underlying negligence action.

Pursuant to the Tort Claims Act, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. "Local agency" is defined as "[a] government unit other than the Commonwealth government." 42 Pa.C.S. § 8501. A "government unit" is defined as "any government agency," which includes "any political subdivision, municipal authority and other local authority, or any officer or agency of any such political subdivision or local authority." 42 Pa.C.S. § 102. We noted in *Sphere Drake* that the definitional section in Chapter 85 of the Judicial Code does not define "local authority," but that the Statutory Construction Act describes it as "a municipal authority or any other body corporate and politic

created by one or more political subdivisions pursuant to statute." *Sphere Drake,* 782 A.2d at 513 (citing 1 Pa.C.S. § 1991).

■ Equally as important as the definition of "local agency" status is "[t]he overall purpose of the Tort Claims Act ... [which] is to limit governmental exposure to tort liability for its acts." *Sphere Drake,* 782 A.2d at 515. See, *e.g., Lory v. City of Philadelphia,* 544 Pa. 38, 674 A.2d 673, 675–76 (1996), *cert. denied,* 519 U.S. 870, 117 S.Ct. 184, 136 L.Ed.2d 123 (1996). See also *Smith v. City of Philadelphia,* 512 Pa. 129, 516 A.2d 306, 311 (1986) (plurality opinion) (preservation of the public treasury as against the possibility of unusually large recoveries in tort cases, is, self-evidently, an important governmental interest).

Volunteer fire companies are local agencies for purposes of the Tort Claims Act. *Regester v. Longwood Ambulance Co., Inc.,* 751 A.2d 694 (Pa.Cmwlth.2000), *aff'd sub nom. Regester v. County of Chester,* 568 Pa. 410, 797 A.2d 898 (2002); *Guinn v. Alburtis Fire Co.,* 531 Pa. 500, 614 A.2d 218, 220 n. 2 (1992) (a volunteer fire company created pursuant to relevant law and legally recognized as the official fire company for a political subdivision is a local agency under the Tort Claims Act); *Kniaz v. Benton Borough,* 164 Pa.Cmwlth. 109, 642 A.2d 551 (1994) (same).

"Local agency status is accorded to volunteer fire companies not because they are otherwise deemed agents of the local government unit under traditional concepts of principal-agency law but rather are traditionally 'accorded local agency status because the duties performed by fire fighters are of public character.'" *Regester,* 751 A.2d at 700 (internal citation omitted).

For many years, ambulance companies have been treated differently than fire companies, with respect to immunity, resulting from the view that fire companies have a unique and distinguishing character and history. In *Zern v. Muldoon,* 101 Pa.Cmwlth. 258, 516 A.2d 799 (1986), *petition for allowance of appeal granted,* 515 Pa. 591, 527 A.2d 549 (1987),

*petition for allowance of appeal denied,* 515 Pa. 596, 528 A.2d 604 (1987), *petition for allowance of appeal denied,* 515 Pa. 597, 528 A.2d 605 (1987), *appeal dismissed as improvidently granted,* 518 Pa. 75, 541 A.2d 314 (1988), the Commonwealth Court cited *Harmony Fire Co. v. Trustees of the Fire Association,* 35 Pa. 496 (1860), which described how voluntary fire companies grew to replace the City of Philadelphia as the provider of firefighting services over the years. The Commonwealth Court described the many legislative enactments that "further interweave the functioning of the government and the fire company," as well as:

> [o]ther statutes [that] also recognize the intimate relationship between a volunteer fire company and governmental entities ... We draw from this plethora of statutory and judicial pronouncements an important conclusion—the history, structure, organization and *public duty* of volunteer fire companies distinguish them as an entity from any other organization in existence in this Commonwealth today.

*Zern,* 516 A.2d at 804.

Later, in *Scrima,* the court reiterated its conclusion that "while ... volunteer ambulance associations provide an important service to the community, they are nevertheless distinguishable from volunteer firemen associations for purposes of immunity." *Scrima,* 599 A.2d at 303. Although citing to some shared similarities between an ambulance company and its volunteer fire company counterpart, the court concluded that "[t]he legislature has established the appropriate degree of immunity for non-medical emergency care providers, but that provision expressly denies immunity in cases of liability arising from the operation or use of an ambulance." *Id.*[9] (citing 42 Pa.C.S. § 8332).

---

**9.** The statute regarding Nonmedical good Samaritan civil immunity provides that:

> **(a) General rule.—** Any person who renders emergency care, first aid or rescue at the scene of an emergency, or moves the person receiving such care, first aid and rescue to a hospital or other place of medical care, shall not be liable to such person for any civil damages as a result of any acts or omissions in rendering the emergency care, first aid or rescue, or moving the person receiving the same to a

The landscape regarding the criteria for establishing local agency immunity changed while the matter *sub judice* was pending on appeal. On October 18, 2001, we issued our decision in *Sphere Drake,* just weeks after the jury reached its verdict in favor of Christy on September 24, 2001. Our holding in *Sphere Drake* broadened the factors that must be analyzed in determining whether an entity is a local agency that enjoys immunity.

In *Sphere Drake,* we granted allocatur in order to determine whether a non-profit corporation created by a political subdivision is immune from liability under the Tort Claims Act. The specific issue was whether the Philadelphia Facilities Management Corporation (PFMC), a non-profit corporation that was incorporated by the City of Philadelphia (City) to provide management services for the city-owned Philadelphia Gas Works (PGW), was immune from liability as a "local agency" under Section 8541 of the Tort Claims Act. We noted that "[o]ur inquiry begins with an examination of the plain language of the relevant statutory provisions." *Sphere Drake,* 782 A.2d at 513 (internal citations omitted).[10] Having reviewed the pertinent definitions, we concluded that PFMC met the definition of "local authority" and, therefore, fell within the larger definition of "local agency" under the Tort Claims Act. *Id.* at 514.

> hospital or other place of medical care, except any acts or omissions intentionally designed to harm or any grossly negligent acts or omissions which result in harm to the person receiving the emergency care, first aid or rescue or being moved to a hospital or other place of medical care.
> **(b) Exceptions.—**
> (1) This section shall not relieve a driver of an ambulance or other emergency or rescue vehicle from liability arising from operation or use of such vehicle.
>
> \* \* \*
>
> 42 Pa.C.S § 8332..

**10.** The definitions that were relevant with respect to PFMC included: (1) "local agency;" (2) "any government agency;" (3) "any municipal or other local authority" as defined at 42 Pa.C.S. § 8501; and (4) "local authority" as set forth in the Statutory Construction Act at 1 Pa.C.S. § 1991.

A second exercise undertaken in *Sphere Drake* to resolve the question of entitlement to immunity as a local agency was an examination of the entity's purposes. We noted that:

> [t]he City's control over PFMC ... [was] pervasive. PFMC is a non-profit corporation incorporated by the Philadelphia City Solicitor's Office ... pursuant to the Pennsylvania Nonprofit Corporation Law of 1972 ... and memorialized in a decree of incorporation issued by the Philadelphia Court of Common Pleas.... PFMC provides management services for the City and its subsequent contract with the City, which arose in conjunction with a City Ordinance, confirms that it exists for the sole purpose of managing PGW.

*Id.* at 511–12.

In determining whether PFMC, a non-profit corporation created by the City of Philadelphia, a political subdivision, was a local agency, we stated that the Decree of Incorporation of PFMC stated that PFMC was a "body politic and corporate and deed and in law," thus making it a "body corporate and politic," which met the definition of "local authority." *Id.* at 513–14. Further, PFMC satisfied the second part of the "local authority" definition, because it was created by the City of Philadelphia, a political subdivision, pursuant to statute. *Id.* at 514. We held that "[b]ecause PFMC meets the definition of 'local authority,' it falls within the scope of the larger definition of 'local agency' under the Tort Claims Act." *Id.* Having reached that conclusion, we further affirmed that **"it is the public control of an entity, its public function, and the effect on public administration and the public purse that is reflected in the definitional scheme and that should inform this Court's judgment."** *Id.* at 515 (emphasis added).

In deciding *Sphere Drake*, we specifically rejected the Commonwealth Court's contrary decision in *Modern Shoppers World Mt. Airy Corporation v. Philadelphia Gas Works*, 164 Pa.Cmwlth. 257, 643 A.2d 136 (1994), *petition for allowance of appeal denied*, 539 Pa. 683, 652 A.2d 1327 (1994), because it was based on one arbitrary factor. In *Modern Shoppers World*, the court held that PFMC was not a "local agency" by "summarily conclud[ing] that the terms 'political subdivision,'

'municipal authority,' and 'local authority,' as defined in the Statutory Construction Act ... include only 'traditional units of government: cities, boroughs, counties, authorities....' " *Sphere Drake,* 782 A.2d at 514 (internal citations omitted).

We held in *Sphere Drake* that the Commonwealth Court erred in *Modern Shoppers World* by finding that one fact alone, specifically PFMC's incorporation as a private non-profit corporation, meant that PFMC was not a "local agency." The court in *Modern Shoppers World* failed to discuss the Statutory Construction Act's definition of "local authority." Instead, it opined that

> [n]o matter how much the functions of PFMC and the City are interwoven, who formed PFMC, who appoints its directors, and no matter now much control is exercised by the City ... PFMC is not an agency of the City — it is a "private non-profit corporation." Its operations are governed by the Nonprofit Corporation Law of 1988 not the City's Home Rule Charter or its general ordinances or, for that matter, laws of the Commonwealth dealing with local governmental affairs.

*Modern Shoppers World,* 643 A.2d at 138 (internal citations and footnote omitted). Additionally, we found it "problematic" that the Commonwealth Court in *Modern Shoppers World* substituted "a policy-based *per se* rule focusing on the fact and method of incorporation, to the exclusion of other factors, in determining whether the entity is a local agency...." *Sphere Drake,* 782 A.2d at 514–15.

Among the many factors we considered in *Sphere Drake* regarding the ways in which PFMC and the City were intertwined were the following: (1) PFMC existed solely to help the City meet its citizens' needs for natural gas service; (2) the City created PFMC; (3) the Mayor of the City appoints PFMC's Board of Directors; (4) the City exercises substantial control over PFMC; (5) PFMC's assets would vest in the City if it were to dissolve; (6) PFMC's employees participated in compensation and benefit plans that are exclusively for City employees; (7) PFMC's sole source of income is the management fee that the City pays to it; and (8) the City is obligated

to indemnify PFMC's directors, officers, and employees from all claims and liabilities arising in connection with its management of PGW. *Id.* at 516.

Because PFMC's sole source of income was the management fee that the City paid it, and because the City was obligated to indemnify and hold harmless PFMC's staff and management, we concluded that it was "clear that any award of damages against PFMC is, in effect, an award against the City. In light of these facts, to hold that PFMC is not a local agency would be contrary to the purposes of the Act." *Id.*

In contrast to the multifactorial approach that we espoused in *Sphere Drake,* the Commonwealth Court's entire analysis of the issue of local governmental immunity in the matter *sub judice* consisted of the following:

> [Cranberry Ambulance] contends that it is entitled to local government immunity under the Tort Claims Act, 42 Pa. C.S. §§ 8541–8542 based on our Pennsylvania Supreme Court's opinion in *Sphere Drake* .... While immunity may be raised at anytime, in this instance **this [c]ourt need only note that this issue was specifically addressed in *Scrima v. Swissvale Emergency Service* .... There, this [c]ourt determined the immunity of a non-profit ambulance company such as [Cranberry Ambulance] is governed by EMSA not the Tort Claims Act.**

Commonwealth Court Opinion at 6–7 (emphasis added).

Although referring to *Sphere Drake* by name, the Commonwealth Court did not apply the principles that we articulated in *Sphere Drake.* On July 18, 2002, Appellants filed an Application for Remand Pursuant to Pa.R.A.P. 123 (Application). (RR at 1122a–1125a). Appellants requested that the Commonwealth Court "remand this matter to the trial court for the development of the record ..." and stated that:

> [b]ecause *Sphere Drake* was decided after a verdict was rendered in this matter, the parties have not litigated the issue of whether the Tort Claims Act governs this dispute, nor has a record been developed *at all* with respect to the

applicability of the non-waivable defense of local government immunity.

Application at ¶ 14 (RR at 1122a, 1124a) (emphasis in original). However, the Commonwealth Court never ruled on that Application, and, as a result, the criteria espoused in *Sphere Drake* for assessing local agency status were not analyzed.

In the matter *sub judice*, the Commonwealth Court chose to rely on its earlier holding in *Scrima* as the sole determinant of the outcome, concluding that the volunteer ambulance company, unlike its voluntary fire company equivalent, is not entitled to local government immunity.[11] In *Scrima*, the Commonwealth Court noted that although numerous statutory provisions treated volunteer ambulance and firemen associations similarly, volunteer ambulance associations "are nevertheless distinguishable from volunteer firemen associations for purposes of immunity." *Scrima*, 599 A.2d at 303.[12]

---

**11.** The court wrongly described *Scrima* as holding that "the immunity of a non-profit ambulance company such as [Cranberry Ambulance] is governed by EMSA not the Tort Claims Act." Commonwealth Court Opinion at 8. The *Scrima* court did not consider any provisions of the EMSA.

**12.** *Scrima* cited its earlier decision in *Zern*, 516 A.2d at 804, for the numerous "legislative enactments [which] further interweave the function of the government and the [ambulance] company." These include:

1. 24 P.S. § 7–707(8) (authorizing donation of school district property to a volunteer fire company or a volunteer ambulance service);
2. 35 P.S. §§ 6941.101, *et seq.*, (Volunteer Fire Company and Volunteer Ambulance Service Grant);
3. 35 Pa.C.S.A. § 7317 (loan assistance program to volunteer fire and ambulance companies for purpose of modernizing facilities and equipment);
4. 43 P.S. § 1201.1 (prohibiting discrimination of an employee because of injury in the line of duty as a volunteer fireman or member of volunteer ambulance service);
5. 44 P.S. § 44.1 (authorizing display of Pennsylvania state flag over a casket of deceased individual who was a member or employee of a volunteer fire company or ambulance service);
6. 53 P.S. § 8502 (Volunteer Firemen's Relief Association Act, which protects volunteer firefighters or members of volunteer ambulance services);
7. 53 P.S. § 36919 (not requiring a third-class city's sale to highest bidder where property to be sold is to a volunteer fire company or ambulance service);
8. 72 P.S. § 3943.2 (authorizing indebtedness for loans to volunteer fire companies and ambulance services);

### Retroactivity

■ We issued our opinion in *Sphere Drake* weeks after the verdict in the instant matter, while the appeal was pending. Our general principle is that we apply decisions involving changes of law in civil cases retroactively to cases pending on appeal. We have articulated that:

> [t]he United States Constitution and the Pennsylvania Constitution neither mandate nor preclude a retroactive application of a new decision. *Blackwell v. Commonwealth, State Ethics Commission*, 527 Pa. 172, 589 A.2d 1094 (1991). **Normally, we apply a new decision to cases pending on appeal at the time of the decision.** *Id.* at 182, 589 A.2d at 1099 (**"The general rule followed in Pennsylvania is that we apply the law in effect at the time of the appellate decision"**); *McHugh v. Litvin, Blumberg, Matusow, & Young*, 525 Pa. 1, 8, 574 A.2d 1040, 1043 (1990) (**"[A]t common law an overruling decision was normally held to be retroactive"**) . . .; *August v. Stasak*, 492 Pa. 550, 554, 424 A.2d 1328, 1330 (1981) (**"At common law, an overruling decision is normally retroactive"**). However, a sweeping rule of retroactive application is not justified. *Blackwell; August.* Retroactive application is a matter of judicial discretion and must be exercised on a case by case basis. *August* . . . .

*Cleveland v. Johns–Manville Corp.*, 547 Pa. 402, 690 A.2d 1146, 1151–52 (1997) (emphasis added).

This practice of retroactive application arises out of precedent established by the United States Supreme Court. The role of retroactivity in civil cases was originally set forth by the Supreme Court in *Chevron Oil v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), where the Court outlined three factors to consider when deciding whether to apply a new decision retroactively. First, the decision to be applied

---

9. 75 Pa.C.S.A. § 1901 (volunteer fire companies and volunteer ambulance services exempted from vehicle title or registration fees); and

10. 75 Pa.C.S.A. § 9004(e)(4) (volunteer fire and ambulance companies exempted from liquid fuels and fuels tax).

*Zern*, 516 A.2d at 804.

non-retroactively must establish a new principle of law; second, the court must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation; and third, the court must weigh the inequity imposed by retroactive operation. *Id.* at 106–07, 92 S.Ct. 349. However, with the Court's decision in *Harper v. Virginia Department of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), the *Chevron Oil* three-step test lost its hold as the dominant approach for retroactive application of new decisions in current civil cases. In *Harper,* the Court held that "this Court's application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision." *Id.* at 90, 113 S.Ct. 2510. Further, the Court observed that "[n]othing in the Constitution alters the fundamental rule of 'retrospective operation' that has governed 'judicial decisions ... for near a thousand years.' " *Id.* at 94, 113 S.Ct. 2510 (quoting *Kuhn v. Fairmont Coal Co.,* 215 U.S. 349, 372, 30 S.Ct. 140, 54 L.Ed. 228 (1910) (Holmes, J., dissenting) (emphasis added)). While Pennsylvania has traditionally used the analysis set forth in *Chevron Oil,*[13] the decision of the Supreme Court in *Harper* further strengthens the general principle that changes in law are to be applied retroactively to pending cases.

█ The parties in the instant matter did not specifically raise the issue of the retroactivity of *Sphere Drake.* Neither party presented significant argument as to why *Sphere Drake* should be applied retroactively in the instant matter. In accordance with our general principle, we hold that it should.

The analysis that the Commonwealth Court employed in determining the matter *sub judice* is problematic. Although acknowledging Cranberry Ambulance's claim of entitlement to local government immunity, the court did not address substan-

13. See *Blackwell,* 589 A.2d at 1100 ("the United States Supreme Court [in *Chevron Oil*] has outlined three separate factors that are to be considered in dealing with the question of whether a decision should be applied prospectively"); *Gibson v. Commonwealth of Pennsylvania,* 490 Pa. 156, 415 A.2d 80, 84 n. 4 (1980) (same); and *Schreiber v. Republic Intermodal Corp.,* 473 Pa. 614, 375 A.2d 1285, 1289 (1977) (same).

tively Appellants' *Sphere Drake* claim; rather, it noted only that "immunity may be raised at any time," apparently in response to Christy's contention that Appellants had waived their immunity argument by not presenting it earlier in the proceedings.[14]  The Commonwealth Court relied strictly on *Scrima,* thereby perpetuating its *per se* rule that an ambulance company is not a local agency.  Whether Cranberry Ambulance will qualify for local agency immunity pursuant to *Sphere Drake* cannot be not known at this stage of the proceedings;  however, it is clear that the Commonwealth Court erred by failing to apply retroactively the principles that this Court enunciated in our most recent holding regarding that issue.

Accordingly, to determine whether Cranberry Ambulance is a "local agency," it will be necessary to determine if it is a non-profit corporation created by a political subdivision, thus meeting the definition of "local authority" in the Statutory Construction Act.  Further, Cranberry Ambulance's relationship with Cranberry Township must be analyzed to determine if its purpose is to carry out a civic or political function of the Township.  Because the Commonwealth Court did not apply the tenets of *Sphere Drake* retroactively, and instead applied a *per se* rule that held that ambulance companies do not have the same immunity that fire companies do, we vacate the Order of the Commonwealth Court and remand the matter for determination of this question.  The parties, upon remand, will have the burden of examining Cranberry Ambulance's pur-

---

**14.**  Christy concedes that "as a general proposition, a 'sovereign' entity is permitted to raise its immunity at any time...." Brief of Appellee at 11.  However, in an ingenious effort to circumvent our holding in *Tulewicz v. Southeastern Pennsylvania Transportation Authority,* 529 Pa. 588, 606 A.2d 427 (1992) (defense of immunity is non-waivable), Christy posits that while a sovereign can raise immunity at any time, a private non-profit entity is not in a position to even claim "sovereign" status, so it should not be permitted to raise the immunity claim without pleading the immunity in a New Matter.  This argument is unsupported and, in fact, is called into question by *Tulewicz,* where we allowed a litigant to assert a governmental immunity defense for the first time on appeal, despite the fact that the appellant argued that governmental immunity did not apply to metropolitan transportation authorities and applied only to the Commonwealth.  *Tulewicz,* 606 A.2d at 429–30.

poses, its articles of incorporation, its activities and relationship with Cranberry Township, the degree of control, if any, that Cranberry Township exercises with respect to Cranberry Ambulance's Board of Directors, and any other factors relevant to establishing the existence of local agency status according to the criteria set forth in this Court's holding in *Sphere Drake.*

## *CONCLUSION*

The Commonwealth has treated volunteer ambulance companies and volunteer fire companies without distinction in numerous statutes, recognizing that ambulance companies perform services that are truly of "public character." We held in *Sphere Drake* that the *Modern Shoppers World* determination that only " 'traditional units of government' fall within the meaning of 'local authority' is squarely at odds with the actual definition of 'local authority.' " *Sphere Drake,* 782 A.2d at 514. We rejected the approach taken in *Modern Shoppers World,* where the Commonwealth Court substituted "a policy-based *per se* rule focusing on the fact and method of incorporation, to the exclusion of other factors, in determining whether the entity is a local agency. . . ." *Sphere Drake,* 782 A.2d at 514–15. Our jurisprudence has evolved with respect to determining whether an entity is a local agency, and is not limited solely to what type of organization is seeking immunity. If Cranberry Ambulance is non-profit corporation created by a political subdivision, the court on remand must then ascertain whether Cranberry Township exercises a degree of control over the entity comparable to the one exerted by the City of Philadelphia over PFMC, in keeping with the definitional scheme and the purpose of the Tort Claims Act.

Therefore, we vacate the Order of the Commonwealth Court and remand the matter to the Commonwealth Court, with instructions for it to remand the case to the trial court for the taking of evidence to determine whether Cranberry Ambulance is a local agency in accordance with our exposition of the relevant criteria in *Sphere Drake.* Upon remand, in assessing if Cranberry Ambulance is a local agency for purposes of

immunity under the Tort Claims Act, the court's examination shall include, but not be limited to, determining whether: (1) there is confirmation of Cranberry Ambulance's status as a non-profit corporation; (2) the ambulance company was incorporated and created by a political subdivision; [15] (3) Cranberry Ambulance assists Cranberry Township in meeting the needs of its citizens; (4) Cranberry Township appoints the entity's Board of Directors; (5) Cranberry Township exercises substantial control over Cranberry Ambulance; (6) the entity's assets would vest in the Township, should the company be dissolved; (7) Cranberry Ambulance's employees participate in any Township benefit plans exclusively reserved to Township employees; (8) the ambulance company's sole source of income is the Township; and (9) the Township indemnifies and holds harmless employees and officers and directors of Cranberry Ambulance from claims and liabilities arising in connection with provision of services. Only after considering and weighing these factors will the court on remand be able to determine whether or not Cranberry Ambulance is a local agency by virtue of its relationship with the Township, and, hence, immune from tort liability.

---

15. For purposes of our analysis in this Opinion, we assume that the relevant political subdivision is Cranberry Township, without precluding the parties from proving otherwise.