IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

_____

No. 14-0799

_____

BPI, INC.,
Petitioner

v.

NATIONWIDE MUTUAL INSURANCE COMPANY,
Respondent

FILED

**May 20, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Certified Question from the United States District Court for the
Eastern District of Kentucky
Civil Action No. 7:12-cv-00139-ART

CERTIFIED QUESTION ANSWERED

_____

Submitted: March 10, 2015
Filed: May 20, 2015

Leigh G. Latherow, Esq.
VanAntwerp, Monge, Jones,
Edwards & McCann, LLP
Ashland, Kentucky
Counsel for Petitioner

Ronda L. Harvey, Esq.
Bowles Rice LLP
Charleston, West Virginia
Drew Byron Meadows, Esq.
*Pro Hac Vice*
Kellie M. Collins, Esq.
*Pro Hac Vice*
Golden & Waters, PLLC
Lexington, Kentucky
Counsel for Respondent

CHIEF JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "Defective workmanship causing bodily injury or property damage is an 'occurrence' under a policy of commercial general liability insurance. To the extent our prior pronouncements in Syllabus point 3 of *Webster County Solid Waste Authority v. Brackenrich and Associates, Inc.*, 217 W.Va. 304, 617 S.E.2d 851 (2005); Syllabus point 2 of *Corder v. William W. Smith Excavating Co.*, 210 W.Va. 110, 556 S.E.2d 77 (2001); Syllabus point 2 of *Erie Insurance Property and Casualty Co. v. Pioneer Home Improvement, Inc.*, 206 W.Va. 506, 526 S.E.2d 28 (1999); and Syllabus point 2 of *McGann v. Hobbs Lumber Co.*, 150 W.Va. 364, 145 S.E.2d 476 (1965), and their progeny are inconsistent with this opinion, they are expressly overruled." Syl. Pt. 6, *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 231 W.Va. 470, 745 S.E.2d 508 (2013).

2. " 'A *de novo* standard is applied by this court in addressing the legal issues presented by a certified questions from a federal district or appellate court.' Syl. Pt. 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998)." Syl. Pt. 2, *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000).

3. "This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court." Syl. Pt. 1, *Bower v. Westinghouse*

*Electric Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999).

4.  "Retroactivity of an overruling decision is designed to provide equality of application to the overruling decision because its new rule has been consciously designed to correct a flawed area of the law." Syl. Pt. 4, *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979).

5.  "In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have

determined the retroactive/prospective question in the same area of the law in their overruling decisions." Syl. pt. 5, *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979).

6. The determination regarding defective workmanship causing bodily injury or property damage contained in *Cherrington v. Erie Insurance Property & Casualty Co.*, 231 W.Va. 470, 745 S.E.2d 508 (2013), should be applied retroactively to any pending claim.

Workman, Chief Justice:

This matter is before the Court upon certified question from the United States District Court for the Eastern District of Kentucky (hereinafter "District Court"). That court has certified two questions regarding retroactive application of this Court's decision in *Cherrington v. Erie Insurance Property & Casualty Co.*, 231 W.Va. 470, 745 S.E.2d 508 (2013). This Court accepted the certified questions and docketed the matter for resolution. Upon review of the parties' briefs and arguments, this Court answers the retroactivity issue presented in the first certified question and remands this matter to the District Court for further proceedings.

## I. Factual and Procedural History

The underlying insurance dispute arose from a construction project in Prestonsburg, Kentucky, for which BPI, Inc. (hereinafter "BPI"), was the general contractor. In February 2008, American Towers LLC (hereinafter "American Towers") hired BPI, a West Virginia contractor, to construct a 300-foot cell tower and cell tower compound, with an access road to the tower, using plans engineered and provided by American Towers. The access road collapsed within one year after the completion of the project, allegedly due to faulty workmanship of BPI and/or its subcontractors.

1

American Towers filed a civil action against BPI, and BPI filed a cross-claim against Nationwide Mutual Insurance Company (hereinafter "Nationwide"), claiming that BPI's potential liability was covered under the commercial general liability (hereinafter "CGL") policy it had purchased from Nationwide. In response, Nationwide sought a declaration that it was not obligated to insure BPI for this incident. Subsequent to discovery, BPI and Nationwide filed cross-motions for summary judgment.[1]

The District Court determined that West Virginia law should apply, based upon the residence of the named insured and the contract itself. The District Court also recognized that determinative issues in this case depend upon the application of West Virginia law regarding BPI's insurance policy covering property damage caused by an "occurrence." The District Court examined this Court's holding in *Cherrington* and noted that damages arising from faulty workmanship had not been deemed damages caused by an "occurrence" prior to this Court's *Cherrington* decision. *See, e.g., Corder v. William W. Smith Excavating Co.*, 210 W.Va. 110, 116, 556 S.E.2d 77, 83 (2001); *Erie Ins. Prop. & Cas. Co. v. Pioneer Home Improvement, Inc.*, 206 W.Va. 506, 512, 526 S.E.2d 28, 34 (1999) ("[D]amages to a building sustained by an owner as the result of a breach of a construction contract due to a contractor's faulty workmanship are a business risk to be borne by the contractor and not by his

---

[1]The parties' motions for summary judgment were denied without prejudice, pending the decision of this Court on the certification order.

commercial general liability insurer.").

The 2013 *Cherrington* decision, issued after American Towers filed the underlying civil action against BPI, overruled several cases examined by the District Court,[2] holding as follows in syllabus point six:

> Defective workmanship causing bodily injury or property damage is an "occurrence" under a policy of commercial general liability insurance. To the extent our prior pronouncements in Syllabus point 3 of *Webster County Solid Waste Authority v. Brackenrich and Associates, Inc.*, 217 W.Va. 304, 617 S.E.2d 851 (2005); Syllabus point 2 of *Corder v. William W. Smith Excavating Co.*, 210 W.Va. 110, 556 S.E.2d 77 (2001); Syllabus point 2 of *Erie Insurance Property and Casualty Co. v. Pioneer Home Improvement, Inc.*, 206 W.Va. 506, 526 S.E.2d 28 (1999); and Syllabus point 2 of *McGann v. Hobbs Lumber Co.*, 150 W.Va. 364, 145 S.E.2d 476 (1965), and their progeny are inconsistent with this opinion, they are expressly overruled.

231 W.Va. at 473, 745 S.E.2d at 511-12, syl. pt. 6. Thus, under *Cherrington*, defective workmanship may qualify as an occurrence, allowing resulting damages to be covered under a policy such as BPI's policy in this case.

In the certified questions presented to this Court, the District Court observes that at least a portion of BPI's potential damages may arise from what could be characterized

---

[2]The policies in the overruled cases and the policy in the present case defined "occurrence" in nearly identical terms. *See, e.g., Corder*, 210 W.Va. at 116, 556 S.E.2d at 83; *Pioneer Home Improvement*, 206 W.Va. at 509, 526 S.E.2d at 31.

as defective workmanship. Thus, the District Court requests this Court to answer the question of whether our decision in *Cherrington* applies retroactively. Further, the District Court poses the question: "if *Cherrington* does not apply retroactively, and the road collapsed because it was poorly constructed, then does the collapse of the road nevertheless qualify as an 'occurrence'?" For reasons explained below, this Court holds that *Cherrington* applies retroactively.

## II. Standard of Review

Pursuant to West Virginia Code § 51-1A-3 (2014),

> the supreme court of appeals of West Virginia may answer a question of law certified to it by any court of the United States or by the highest appellate court or the intermediate appellate court of another state or of a tribe of Canada, a Canadian province or territory, Mexico or a Mexican state, if the answer may be determinative of an issue in a pending cause in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state.

This Court has consistently explained that "'[a] *de novo* standard is applied by this court in addressing the legal issues presented by a certified questions from a federal district or appellate court.' Syl. Pt. 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998)." Syl. Pt. 2, *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000); s*ee also* Syl. Pt. 1, *T. Weston Inc. v. Mineral Cnty.*, 219 W.Va. 564, 638 S.E.2d 167 (2006): Syl. Pt. 1, *Feliciano v. 7-Eleven, Inc.*, 210 W.Va. 740, 559 S.E.2d 713 (2001); Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). Likewise, in syllabus point one of

*Bower v. Westinghouse Electric Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999), this Court explained that we "undertake[] plenary review of legal issues presented by certified question from a federal district or appellate court." Under this plenary standard of review, we proceed to consider this matter.

## III. Discussion

### A. Holding of *Cherrington*: No Specific Reference to Retroactivity

As referenced above, this Court's decision in *Cherrington* addressed the issue of defective workmanship causing bodily injury or property damage and held that such event is properly characterized as an "occurrence" under a CGL insurance policy. The *Cherrington* decision altered the law in West Virginia with regard to that issue, and the new principle was applied to the 2004 insurance policy under review in *Cherrington*. Beyond its decision to apply the new principle to the 2004 policy in that case, this Court did not address the matter of retroactivity in *Cherrington,* and no reference to past or future insurance policies was made.

### B. Retroactivity of Judicial Decisions

This Court has wisely explained that we will not attempt to formulate a "single answer to questions that may arise on the issue of retroactivity." *Adkins v. Leverette,* 161

5

W.Va. 14, 20, 239 S.E.2d 496, 499 (1977).[3] In this Court's scrutiny of concepts of retroactivity, however, discussions appropriately commence with the recognition that this Court, "like all courts in the country, adheres to the common law principle that, '[a]s a general rule, judicial decisions are retroactive in the sense that they apply both to the parties in the case before the court and to all other parties in pending cases.' *Crowe v. Bolduc*, 365 F.3d 86, 93 (1st Cir. 2004)." *Caperton v. A.T. Massey Coal Co.*, 225 W. Va. 128, 157, 690 S.E.2d 322, 351 (2009); *see also Alaskan Vill., Inc. v. Smalley*, 720 P.2d 945, 949 (Alaska 1986) ("Absent special circumstances, a new rule of law will apply in the case before the court and in all subsequent cases."); *Citicorp N. Am., Inc. v. Franchise Tax Bd.*, 100 Cal.Rptr.2d 509, 525 (Cal. Ct. App. 2000) ("[T]he general rule as to judicial opinions is that they are fully retroactive."); *Findley v. Findley*, 629 S.E.2d 222, 228 (Ga. 2006) ("[W]e shall continue to apply the general rule that a judicial decision announcing a new rule is retroactive[.]"); *Aleckson v. Village of Round Lake Park*, 679 N.E.2d 1224, 1226 (Ill. 1997) ("Generally, when a court issues an opinion, the decision is presumed to apply . . . retroactively [.]"); *Dempsey v. Allstate Ins. Co.,* 104 P.3d 483, 489 (Mont. 2004) ("Therefore today we reaffirm our general rule that [w]e give retroactive effect to judicial decisions." (internal quotations and citation omitted)); *In re Commitment of Thiel*, 625 N.W.2d 321, 326 (Wis. Ct. App. 2001) ("Wisconsin generally adheres to the 'Blackstonian Doctrine,' which

---

[3]Similarly, this Court acknowledged in *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993), that "we continue to recognize that there is no one rule which will answer questions regarding the issue of retroactivity in every case. . . ." *Id*. at 416, 432 S.E.2d at 86.

6

provides that a decision that clarifies, overrules, creates or changes a rule of law is to be applied retroactively.").

Particularly relevant in the civil context, courts have consistently held that common law provides that appellate decisions are presumed to apply retroactively. *Ireland v. Worcester Ins. Co.*, 826 A.2d 577, 580-81 (N.H. 2003); *see also Beavers v. Johnson Controls World Servs., Inc.*, 881 P.2d 1376, 1383 (N.M. 1994) ("[W]e believe there should be a presumption that a new rule adopted by a judicial decision in a civil case will operate retroactively."); *Christy v. Cranberry Volunteer Ambulance Corps, Inc.*, 856 A.2d 43, 51 (Pa. 2004) ("Our general principle is that we apply decisions involving changes of law in civil cases retroactively[.]"); *State v. Styles*, 693 A.2d 734, 735 (Vt. 1997) ("We have previously adopted the common law rule that a change in law will be given effect while a case is on direct review, except in extraordinary cases. This rule applies whether the proceedings are civil or criminal.").

In the United States Supreme Court's decision in *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991), a majority of the justices agreed that a rule of federal law, announced and applied to the parties in the case, must be given full retroactive effect by all courts adjudicating federal law. *Id*. at 540. The Court recognized the potential inequity of selective prospectivity, defined as a situation in which a court applies a new rule "in the case

7

in which it is pronounced, then return[s] to the old one with respect to all others arising on facts predating the pronouncement." *Id.* at 537. The Court reasoned that selective prospectivity ignores the principle that "litigants in similar situations should be treated the same, a fundamental component of stare decisis and the rule of law generally." *Id.* Retroactivity was recognized as "overwhelmingly the norm, and is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law" *Id.* at 535 (citations omitted).

These principles of retroactivity were expanded by the United States Supreme Court in *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993), and the Court explained that a controlling interpretation of federal law "must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." *Id.* at 97. The Court noted that such rule extends the ban against selective application of new rules. *Id.* "[W]e can scarcely permit the substantive law to shift and spring according to the particular equities of individual parties' claims of actual reliance on an old rule and of harm from a retroactive application of the new rule." *Id.* at 97 (quotations and brackets omitted). The Court in *Harper* concluded that in the absence of an announcement that a decision is to have prospective effect only, "it is fairly assumed that the decision will apply prospectively and retroactively." *Id.* at 98

8

(additional citation omitted).[4]

Justice Harlan provided an illuminating allegory in his separate opinion in *Williams v. United States*, 401 U.S. 667 (1971) (Harlan, J., concurring and dissenting), regarding the injustice of selective prospectivity. He explained that "[s]imply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow

---

[4]In a *purely* prospective ruling, "even the party who successfully litigates the issue does not benefit from the new rule." *Ashland Oil, Inc. v. Rose*, 177 W. Va. 20, 25 n.10, 350 S.E.2d 531, 537 n.10 (1986). Thus, all cases in which new rulings are applied to the litigants in that case must be characterized as at least partially retroactive. "Prospective application of a judicial decision is a departure from the general rule and is only appropriate in exigent circumstances." *Paul v. Wayne Co Dep't of Pub. Serv.*, 722 N.W.2d 922, 924 (Mich. 2006).

The various approaches to the issue of retroactivity were aptly summarized in *Thompson v. Hagan*, 523 P.2d 1365 (Idaho 1974):

> Three different approaches to retroactivity can be identified. The first approach is the traditional rule which is derived from the concept that courts do not pronounce new law, but only discover the true law. Under this approach there are no new decisions, but only clarifications of the true law which makes a decision applicable to both past and future cases. The second approach is the prospective rule. Under this rule a decision is effective only in future actions, and does not affect the rule of law in the case in which the new rule is announced. The third approach is the modified prospective rule which is a combination of the traditional and prospective rules. Under the modified prospective rule, the new decision applies prospectively and to the parties bringing the action resulting in the new decision; or, to the parties bringing the action and all similar pending actions.

*Id.* at 1371.

by unaffected by that new rule" was inconsistent with proper judicial standards. *Id*. at 679.

Courts have consistently applied the settled principle of treating similarly-situated defendants

in the same manner and attempting to refrain from leaving one to be a "chance beneficiary."

*United States v. Johnson*, 457 U.S. 537, 555-56 n.16 (1982). The United States Supreme

Court emphasized that failure to apply new rules to pending cases creates an "actual

inequity" through the court's selection of "which of many similarly situated defendants

should be the chance beneficiary of a new rule." *Griffith v. Kentucky*, 479 U.S. 314, 323

(1987) (citations omitted).

The concept of applying new rules to pending cases was also addressed in

*Forster v. North Dakota Workers Compensation Bureau*, 447 N.W.2d 501 (N.D. 1989),

where the North Dakota court providing the following sound reasoning:

> Thus a court upon considering the circumstances of the particular case may determine that an overruling decision should be given limited retroactive effect, so that the new rule, besides governing the rights of the parties to the overruling case, will govern the rights of parties to other cases which were pending when the overruling case was decided, but that the old rule will still govern the rights of the parties which had been terminated prior to the time the overruling case was decided.

*Id*. at 505 n.4.

This Court has also recognized the evolution of concepts of retroactivity and

has noted that despite the common law rule of retroactivity of appellate judicial decisions,

10

"[t]he courts of this country long have recognized exceptions to the rule of retroactivity[.]"

*Ashland Oil, Inc.*, 177 W.Va. at 23, 350 S.E.2d at 534. This Court's seminal case regarding

exceptions to retroactivity is *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d

879 (1979). In *Bradley*, this Court altered the principles of contributory negligence and held

that "[a] party is not barred from recovering damages in a tort action so long as his

negligence or fault does not equal or exceed the combined negligence or fault of the other

parties involved in the accident." *Id.* at 332, 256 S.E.2d at 880, syl. pt. 3. The Court in

*Bradley* overruled prior contributory negligence cases to the extent that they were

inconsistent with the newly announced principles. *Id.* at 343, 256 S.E.2d at 885. Within the

*Bradley* opinion, this Court also addressed the matter of retroactivity of its decision and held

as follows in syllabus point four: "Retroactivity of an overruling decision is designed to

provide equality of application to the overruling decision because its new rule has been

consciously designed to correct a flawed area of the law." *Id.* at 332, 256 S.E.2d at 880, syl.

pt. 4.

In syllabus point five of *Bradley,* this Court enumerated several considerations

in a determination of retroactivity, with the weight given to each factor to vary with the facts

of a particular case.

> In determining whether to extend full retroactivity, the
> following factors are to be considered: First, the nature of the
> substantive issue overruled must be determined. If the issue
> involves a traditionally settled area of law, such as contracts or

11

property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater then need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.

163 W.Va. at 332, 256 S.E.2d at 880, syl. pt. 5. Despite the adoption of these factors, this Court noted in *Bradley* that "while general guidelines can be evolved to determine whether retroactive or prospective application should be given to an overruling decision, it is difficult to etch them with precision so that they will fit all cases." *Id.* at 348, 256 S.E.2d at 888. The Court ultimately found in favor of retroactivity of the new comparative negligence approach of *Bradley*. *Id*. at 351, 256 S.E.2d at 890.

Critically, the factors courts have adopted, such as those utilized by this Court in *Bradley,* "are premised on the presumption that normally, our decisions will be given retroactive effect. We employ the factors to determine whether equity requires a departure from the norm." *Baatz v. Arrow Bar*, 426 N.W.2d 298, 300 (S.D. 1988) (quoting Am.Jur.2d

12

*Courts* § 233 (1965) ("the general rule in civil cases seems to be that unless the overruling decision declares that it shall have only prospective effect, [ ] the judicial overruling of a precedent has both prospective and retroactive effect.")).[5]

In applying the *Bradley* factors, this Court has "utilized principles of retroactivity in certain cases when we have created new principles of law which have marked a clear departure from our prior law." *City of Fairmont v. Pitrolo Pontiac-Cadillac Co.*, 172 W. Va. 505, 511, 308 S.E.2d 527, 533 (1983); *see also Sitzes v. Anchor Motor Freight, Inc.*, 169 W.Va. 698, 704, 289 S.E.2d 679, 683 (1982) (finding reversal to be "clearly foreshadowed by our decisions . . . overruling other common law immunities, particularly family immunities."); *Bond v. City of Huntington*, 166 W.Va. 581, 276 S.E.2d 539 (1981).

In reviewing the *Bradley* factors, as applicable to the present case, this Court

---

[5]Similarly, in *Plumley v. Hale*, 594 P.2d 497 (Alaska 1979), the Alaska court aptly explained:

> Absent special circumstances, a new decision of this court will be given effect in the case immediately before the court, and will be binding in all subsequent cases in which the point in question is properly raised, regardless of the fact that the events to which the law is applied occurred prior to the actual decision of the Court. In a number of our cases however, we have recognized that on occasion, the interests of justice may demand that a new rule of law only be applied prospectively.

*Id.* at 502 (footnote omitted).

first examines the nature of the substantive issue overruled. Although the *Cherrington* decision overruled prior cases to the extent they were inconsistent with the holding in *Cherrington*, the definition of "occurrence," particularly within the context of subcontractor work performance, was not an entirely settled area of the law. For example, the *Corder* decision held that "[p]oor workmanship, standing alone, cannot constitute an 'occurrence.'" 210 W.Va. at 116, 556 S.E.2d at 83. This Court did not explain the meaning of "standing alone" in *Corder* and did not address issues regarding defective work performed by a subcontractor, as in *Cherrington*.[6] Thus, as BPI argues, the prior holdings did not settle the particular area of law addressed by this Court in *Cherrington* and presented in the current case.

The second *Bradley* factor is easily resolved in this case; this is a substantive matter, rather than a procedural one which is generally more likely to be applied retroactively. The third *Bradley* factor analyzes the impact of the decision, and we address the issue of whether *Cherrington* has a relatively narrow impact and is likely to affect only a few parties. As observed by this Court in *Richmond v. Levin*, 219 W.Va. 512, 637 S.E.2d

---

[6]In *Cherrington,* this Court held that defective workmanship may qualify as an occurrence allowing damages resulting from the defective workmanship. This Court also held that although the "your work" exclusion in the CGL policy excludes coverage for the insured contractor's work, such exclusion did not apply where the work at issue was performed by the insured's subcontractor. *See* 231 W.Va. at 482, 745 S.E.2d at 520 (explaining that policy exclusion "specifically provides coverage for work performed by subcontractors by excepting it from 'your work' exclusion[.]").

14

610 (2006), a concern that "retroactively would revive all cases decided before the decision was reached" is not relevant. *Id*. at 518, 637 S.E.2d at 616. This contention was rejected in *Richmond*, and this Court explained that "[t]he issue of retroactivity . . . is narrowly confined to cases pending . . . when *Louk* [*v. Cormier*, 218 W. Va. 81, 622 S.E.2d 788 (2005)][7] was decided." 219 W.Va. at 518, 637 S.E.2d at 616. The Court in *Richmond* clarified that "we are not aware of any prior 'civil' decision of this Court that was made retroactive to cases in which the appeal period had expired." *Id*. at 518-19, 637 S.E.2d at 616-17.[8]

In the present case, retroactive application of *Cherrington* would affect a narrow portion of the law dealing specifically with insurance contracts where this type of provision becomes pivotal, and *Cherrington* is a common law decision, overruling and clarifying prior common law decisions that the Court believed to be flawed or incomplete. As in *Sitzes*, applying the judicial decision retroactively would "affect only a limited number of cases." 169 W. Va. at 704, 289 S.E.2d at 683.

---

[7]In *Louk,* this Court held that the Medical Professional Liability Act's non-unanimous jury verdict provision was unconstitutional. 218 W. Va. at 94, 622 S.E.2d at 801.

[8]It is somewhat intriguing to note that a party in *Richmond* suggested the approach of allowing a court to simply decide each question anew, presumably in the same manner as previously decided, rather than choosing to characterize a prior judicial decision as retroactive. 219 W.Va. at 516 n.5, 637 S.E.2d at 614 n.5. The assertion was made that "this Court need not determine whether *Louk* applies retroactively, and could simply decide anew whether or not the statute is constitutional." *Id.* This Court responded: "We decline to reinvent the wheel and will confine our analysis to the issue of retroactivity." *Id*.

15

The fourth *Bradley* consideration is not particularly relevant to our inquiry in this case because *Cherrington* did not represent a change in statutory or constitutional law. Additionally, as addressed above, the *Cherrington* decision, while overruling prior cases to the extent they were inconsistent, did not involve substantial public issues. It merely addressed the narrow issue of whether faulty or defective workmanship could constitute an "occurrence" under a CGL policy.

Similarly, the fifth *Bradley* factor requires this Court to address how radically the new decision departs from previous substantive law. As noted above and argued by BPI, the *Cherrington* decision concerned faulty workmanship performed by a subcontractor. The holding does not represent a radical departure from previous law in West Virginia or throughout the country. This Court's decisions prior to *Cherrington* did not directly address the issue decided by *Cherrington*. The sixth *Bradley* factor is closely connected to that inquiry, based upon the national recognition of evolving legal principles concerning whether faulty workmanship of a subcontractor constitutes an occurrence. *See Cherrington*, 231 W.Va. at 479, 745 S.E.2d at 517 ("However, a majority of other states have reached the opposite conclusion [that faulty workmanship may constitute an occurrence]).[9] In other

_____

[9]The split in authority on this issue was readily apparent as early as 2003, as indicated by *United States Fidelity & Guarantee Co. v. Continental Casualty Co.*, 120 S.W.3d 556 (Ark. 2003). In that case, the court noted:

> [T]here is a split in the jurisdictions over whether defective
> (continued...)

16

jurisdictions applying recent changes regarding whether faulty workmanship constitutes an

"occurrence," courts have applied the new principles to pending cases immediately. *See, e.g., Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 864 F. Supp. 2d 744, 748 (S.D. Ind. 2012) (observing that precedential landscape had been altered by Indiana Supreme Court's new judicial decision while case was pending and acknowledging that new principles regarding faulty workmanship characterized as accident would be applied).

In the present case, we also consider the insurer's reliance interests and find

[9](...continued)
workmanship is an accident and therefore an "occurrence" which is covered under the terms of an insurance policy. *See Heile v. Herrmann*, 136 Ohio App.3d 351, 736 N.E.2d 566 (1999); *Pursell Construction, Inc. v. Hawkeye–Security Ins. Co.*, 596 N.W.2d 67 (1999); *Standard Fire Ins. Co. v. Chester-O'Donley & Associates, Inc.*, 972 S.W.2d 1 (1998), *R.N. Thompson & Associates, Inc. v. Monroe Guaranty Ins. Co.*, 686 N.E.2d 160 (1997); *United States Fidelity & Guaranty Corp. v. Advance Roofing & Supply Co., Inc.*, 163 Ariz. 476, 788 P.2d 1227 (Ct. App. 1989) (all holding that faulty or defective workmanship is not an accident and therefore not an "occurrence" under the terms of an insurance policy). *But see Fidelity & Deposit Co. of Maryland v. Hartford Casualty Ins. Co.*, 189 F.Supp.2d 1212 (D.Kan.2002); *Colard v. American Family Mutual Ins. Co.*, 709 P.2d 11 (Colo. App. 1985) *United States Fidelity & Guaranty Co. v. Bonitz Insulation Co. Of Alabama*, 424 So.2d 569 (1982) (all holding that faulty or defective workmanship is an accident and therefore an "occurrence" under the terms of an insurance policy).

120 S.W.3d at 563 n.4; *see also Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 707 S.E.2d 369, 371 (Ga. 2011) (acknowledging "trend in a growing number of jurisdictions" to cover damage resulting from poor workmanship).

they do not mandate a finding of prospectivity of the *Cherrington* decision. Although this

Court recognizes that retroactive application of *Cherrington* presents a degree of unfairness

to insurers who have presumably set their rates based upon a definition of "occurrence"

which differs from that announced in *Cherrington*, this "is a problem which is always

encountered when there is a change in the law brought about by judicial decision." *Suh v.*

*Pingo Corp.*, 736 P.2d 342, 348 (Alaska 1987) (Matthews, J., dissenting).

Professor Keeton also addressed the effects on liability insurers and the process

of examining the competing interests involved in a retroactivity decision. His rationale for

retroactive overruling is persuasive:

> It is sometimes suggested that retrospective overruling in tort
> cases is unfair not only to the uninsured institutions but also to
> the liability insurers whose rates have been set in reliance on
> precedent and to the group of policyholders who will pay higher
> than the compensatory premiums in order to make up for the
> losses the insurers suffered by collecting inadequate premiums
> over the period to which the overruled decision retrospectively
> applies. But the implications of this view make it wholly
> unacceptable. First, its general acceptance would in effect
> disable courts from creative decisions in accident law. Second,
> the need for protection of the reliance interest is much less
> significant in this context than in the context of uninsured
> institutions, since the risk of disastrous impact upon a particular
> insurer is so much less serious. Some guarantee of this appraisal
> appears in the fact that ordinarily it is impossible to trace the
> impact of particular legal doctrines upon liability insurance
> rates. Also, even where the doctrinal change is one that might
> promptly affect rates, as in the case of overruling an immunity,
> a contrast between the reliance of an insurer and the reliance of
> an institution in not insuring remains. A single heavy judgment

against an uninsured hospital would be more likely to spell catastrophe than the number of such judgments that would fall on a single insurer. Moreover, there is a good prospect of the insurer's spreading the loss among a group that comes fairly close to corresponding to the group of policyholders who might appropriately have been required to pay higher premiums if the overruling decision had been forecast.

Keeton, *Creative Continuity in the Law of Torts*, 75 Harv.L.Rev. 463, 492-93 (1962) (emphasis added, footnote omitted).

In the case sub judice, an exception to the general rule of retroactivity is not warranted. This Court finds no reason to deviate from the conventional retroactivity precepts in the present case, and this action was pending at the time *Cherrington* was decided. We consequently hold that the determination regarding defective workmanship causing bodily injury or property damage contained in *Cherrington v. Erie Insurance Property & Casualty Co.*, 231 W.Va. 470, 745 S.E.2d 508 (2013), should be applied retroactively to any pending claim. Thus, any case that was not final at the time the *Cherrington* decision was rendered should have the benefit of our holding in *Cherrington.* Based upon our holding that *Cherrington* is retroactive to pending cases, the second certified question need not be addressed.[10]

---

[10] "'In a certified case, this Court will not consider certified questions not necessary to a decision of the case." Syllabus Point 6, *West Virginia Water Serv. Co. v. Cunningham*, 143 W.Va. 1, 98 S.E.2d 891 (1957)." Syl. Pt. 7, *Shell v. Metropolitan Life Ins. Co.*, 181 W.Va. 16, 380 S.E.2d 183 (1989).

## IV. Conclusion

The certified question having been answered, this case is remanded to the United States District Court for the Southern District of Kentucky for further proceedings.

Certified question answered.