**Albert ZUPPO and Anne Zuppo, his wife**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1999.

Decided Oct. 27, 1999.

J. Bart DeLone, Harrisburg, for appellant.

Howard A. Rothenberg, Scranton, for appellees.

Before COLINS, J., KELLEY, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Department of Transportation (DOT) appeals from the January 29, 1999 order of the Court of Common Pleas of Susquehanna County (trial court) denying DOT's motion for summary judgment.[1] This case presents the issues of (1) which immunity provisions apply in this case, those found in Section 8522(b) of the Judicial Code[2] or those found in Section 7704(a) the Emergency Management Services Code (Emergency Code);[3] and, if we determine that the provisions of the Emergency Code govern, (2) whether the trial court erred in denying DOT's motion for summary judgment where DOT contended that the plaintiffs in their complaint failed to allege that DOT's employee, engaged in emergency snow removal services during a period of time in which the Governor had issued a Proclamation of Disaster Emergency, committed willful misconduct so as to abrogate the immunity afforded to DOT's employees by Section 7704(a) of the Emergency Code.[4] For the reasons that follow, we reverse the trial court's order.[5]

The facts as alleged by Albert and Anne Zuppo in their September 23, 1997 complaint (R.R. 7–17) and as testified to in their depositions are as follows.[6] On January 11, 1996, Mr. Zuppo, who was driving the couple's pick-up truck, pulled off to the side of Brushville Road upon observing the

1. Pa. R.C.P. No. 1035.2 provides as follows:

> After the relevant pleadings are closed ... any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

2. 42 Pa.C.S. § 8522(b).

3. 35 Pa.C.S. § 7704(a).

4. In pertinent part, Section 7704(a) of the Emergency Code provides immunity for the Commonwealth and its employees from liability for death or injury to any person, except in cases of willful misconduct, during periods in which the Governor has declared a disaster emergency.

5. On February 17, 1999, the trial court entered an order granting DOT's application for determination of finality under Pa. R.A.P. 341. In its opinion in support of that order, the court noted that there is a controlling issue of law in that there is no appellate authority interpreting the Emergency Code. Additionally, the court noted that an immediate appeal would advance the ultimate determination in the matter because, if it were found that DOT has absolute immunity, there would be little or nothing to try before a fact finder. (Trial Court's February 17, 1999 Opinion at 1–2; R.R. 173–174.)

6. Each party notes in its respective brief that, after the close of discovery, Mr. Zuppo died of cancer. By stipulation and order dated March 30, 1999, the trial court ordered that Mrs. Zuppo, as administrator of her husband's estate, be substituted as a party plaintiff in place of her husband.

approach of a snow removal vehicle from the opposite direction because he thought that the vehicle was going to hit their truck. (Depo. of Albert Zuppo, N.T. at 71.) The Zuppos were stopped for approximately three minutes when the vehicle violently struck the truck's front wheel and injured them. (Depo. of Albert Zuppo, N.T. 81, R.R. 80; Depo. of Anne Zuppo, N.T. at 55, R.R. 102; Complaint at Paragraph 5, R.R. 8.) The snow removal vehicle was actually a grader and it was the grader's center blade that made contact with the truck's front wheel. (Depo. of Albert Zuppo, N.T. 84, 100–101, R.R. 81, 85.)

It had snowed the night before and the road was covered with large snow banks on both sides, with approximately one and one-half lanes open. (Depo. of Albert Zuppo, N.T. 72, R.R. 78; Depo. of Anne Zuppo, N.T. 45–46, R.R. 99–100.) Mrs. Zuppo testified that the portion of the road where the accident occurred was "basically flat" and that visibility was unrestricted for approximately 80–100 yards. (Depo. of Anne Zuppo, N.T. 43, 44, R.R. 99.)

At the time of the impact, the driver of the grader was plowing snow. (Depo. of Albert Zuppo, N.T. 93, R.R. 83; Depo. of Anne Zuppo, N.T. 51–52, R.R. 101.) Mrs. Zuppo testified that the grader was not "racing down the road" and that it did not appear as if the driver was trying to hit their pick-up truck. (Depo. of Anne Zuppo, N.T. 50, 52, R.R. 101.) Mr. Zuppo testified that the grader "wasn't going that fast." (Depo. of Albert Zuppo, N.T. 91, R.R. 83.)

The four-count complaint includes two counts of negligence and two counts of loss of consortium. The Zuppos alleged that

the accident was due to the negligent, careless and reckless conduct of DOT through its agents, servants and/or employees.[7]

Having detailed their injuries, the Zuppos requested damages in an amount not in excess of $30,000.00, plus interest and costs. DOT filed an answer to the complaint therein admitting that it was a Commonwealth agency and raising immunity as a defense.

On November 6, 1998, DOT filed a motion for summary judgment and brief in support thereof. DOT asserted that, four days prior to the accident, the Governor had issued a proclamation in which he declared a disaster emergency in approximately two thirds of the Commonwealth's counties, including Susquehanna, due to a series of severe winter storms. (R.R. 2–3.) The proclamation provided that "[t]he Commonwealth, its employees, agents or representatives engaged in any emergency services activities concerning snow removal, debris and wreckage removal, public health and safety activities, or other related functions within the declared disaster counties shall be entitled to receive civil liability protection afforded to them by Sections 7303(c) and 7704 of the Emergency Management Services Code." (R.R. 3.) Thus, DOT argued that, given its immunity, it was irrelevant whether either party was negligent.

The trial court determined that DOT was not entitled, merely as a matter of law, to the defense of immunity from civil liability. Further, it concluded that there were genuine issues of material fact to be tried. It held that

---

7. We find it to be irrelevant, in this case, that the Zuppos did not specifically name in their complaint the DOT employee who was driving the grader. Mr. Leslie Turner, the driver of the grader involved, later testified by deposition. Also, there was no ambiguity in the complaint that the allegations referenced the employee who was driving the snow removal vehicle that struck the Zuppos' truck. The pleading, with regard to what agents, servants or employees were involved, was sufficiently specific so as to enable the opposing party to prepare a response. *See Commonwealth, Environmental Pollution Strike Force v. Jeannette*, 9 Pa.Cmwlth. 306, 305 A.2d 774 (1973). In any event, since we conclude that the trial court erred in denying DOT's motion for summary judgment, any failure to specifically name the employee is immaterial.

the General Assembly did not intend to reduce [sic, increase] the public's vulnerability by conferring upon the Commonwealth, during the instant disaster, emergency blanket immunity from civil liability where if, as it is alleged, one of its snow-removal vehicles struck a vehicle which had been stopped for three minutes.

(Trial Court's Opinion at 3.)

We must determine whether the trial court erred in denying DOT's motion for summary judgment. A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions on file, together with any affidavits, demonstrate that there exists no genuine issue of fact. *Accu–Weather v. Prospect Communications*, 435 Pa.Super. 93, 644 A.2d 1251 (1994). The moving party has the burden of proving that no genuine issue of material fact exists. *Id.* In addition, the court must examine the record in the light most favorable to the non-moving party and resolve all doubt against the moving party. *Stidham v. Millvale Sportsmen's Club*, 421 Pa.Super. 548, 618 A.2d 945 (1992). Finally, summary judgment should only be entered in cases that are clear and free from doubt. *Hathi v. Krewstown Park Apartments*, 385 Pa.Super. 613, 561 A.2d 1261 (1989).

**I.**

■ As a threshold issue, we first address DOT's contention that, even if the Zuppos had presented specific facts to establish willful misconduct, it would have been to no avail because DOT's employees acting within the scope of their employment are protected from the imposition of liability for even intentional tort claims

under Section 8522(b) of the Judicial Code.[8] We must consider the interplay between the Emergency Code and Section 8522(b) of the Judicial Code because, if we conclude that the Judicial Code applies, we need not address whether the Zuppos presented specific facts to establish willful misconduct so as to defeat DOT's motion for summary judgment. For the reasons that follow, we find the Emergency Code to be applicable in this case.

On September 28, 1978, the General Assembly enacted Act 152 reinstating the doctrine of sovereign immunity.[9] The provision provided as follows:

Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) *unless otherwise specifically authorized by statute.*

1 Pa.C.S. § 2310 (emphasis added).

Approximately two months after it enacted the above-quoted provision, the General Assembly passed the Emergency Code on November 26, 1978. On October 5, 1980, the General Assembly enacted Chapter 85 of the Judicial Code, entitled "Matters Affecting Government Units"

---

**8.** *See Holt v. Northwest Pennsylvania Training Partnership Consortium*, 694 A.2d 1134, 1140 (Pa.Cmwlth.1997) (holding that "[u]nlike for local agency employees, willful misconduct does not vitiate a Commonwealth employee's immunity because sovereign immunity protects a Commonwealth employee acting within the scope of his or her employment from liability, even for intentional torts.")

**9.** The General Assembly amended the provision on May 15, 1998 to insert a reference to Title 62. That amendment is irrelevant to the purposes for which we are citing the section in the instant case.

and, *inter alia*, encompassing the immunity provisions for Commonwealth parties. In 1998, when the General Assembly amended 1 Pa.C.S. § 2310, it did not delete that portion providing that, when the General Assembly specifically waives sovereign immunity, claims against the Commonwealth shall be brought only as directed by the provisions of Title 42, *unless otherwise specifically authorized by statute*. We conclude here that the General Assembly, by virtue of passing the Emergency Code, provided another statute, in addition to Title 42, where it specifically waived sovereign immunity, albeit in a limited way. Therefore, we conclude that the General Assembly can be presumed to have intended for the Emergency Code to coexist with Section 8522(b) of the Judicial Code. We turn now to DOT's argument that Section 8522(b) of the Judicial Code should apply in the instant case.

DOT argues that to any extent that the Emergency Code conflicts with Section 8522(b) of the Judicial Code, the latter governs as it is the General Assembly's latter pronouncement. *Department of Transportation, Bureau of Driver Licensing v. Campbell*, 138 Pa.Cmwlth. 337, 588 A.2d 75 (1991); Section 1936 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1936. The conflict would be that, under the Emergency Code, Commonwealth employees engaged in emergency services activities are liable for willful misconduct whereas under Section 8522(b) of the Judicial Code, Commonwealth employees acting within the scope of their employment are not liable for even intentional torts.

We note that there are other tenets of statutory construction besides the one providing that the General Assembly's latter pronouncement shall prevail. Two other principles provide that when two statutes appear to conflict, we should give effect to both if possible, and that when a general provision conflicts with a more specific provision of the same or another statute, the specific provision shall govern. Section 1933 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1933.

Here, Section 7704(a) of the Emergency Code very specifically applies to situations where Commonwealth employees are engaged in emergency services activities. 35 Pa.C.S. § 7704(a). Under Section 7102 of the Emergency Code, 35 Pa.C.S. § 7102, the term "emergency services" is defined as follows:

> The preparation for and the carrying out of functions, other than functions for which the military forces are primarily responsible, to prevent, minimize and provide emergency repair of injury and damage resulting from disasters, together with all other activities necessary or incidental to the preparation for and carrying out of those functions. The functions include, without limitation, firefighting services, police services, medical and health services, rescue, engineering, disaster warning services, communications, radiological, shelter, chemical and other special weapons defense, evacuation of persons from stricken areas, emergency welfare services, emergency transportation, emergency resources management, existing or properly assigned functions of plant protection, temporary restoration of public utility services and other functions related to civilian protection.

In comparison, the nine narrow exceptions set forth in Section 8522(b) of the Judicial Code, though subject to strict construction,[10] are somewhat more general and are not limited to a period during which the Governor issues a proclamation. They include 1) vehicle liability; 2) medical-professional liability; 3) the care, custody or control of personal property; 4) Commonwealth real estate, highways and sidewalks; 5) potholes and other dangerous conditions; 6) the care, custody or

---

**10.** *Warnecki v. Southeastern Pennsylvania Transp. Auth.*, 689 A.2d 1023 (Pa.Cmwlth. 1997).

control of animals; 7) liquor store sales; 8) natural guard activities; and 9) toxoids and vaccines.

Section 7704(a) of the Emergency Code is highly specific. It provides that neither the Commonwealth nor any of its employees shall be liable when engaged in emergency services activities, except in cases of willful misconduct. In addition, a proclamation of the Governor activates the immunity-waiver provision for only a limited duration of time.[11] Therefore, we conclude that we can give effect to both Section 8522(b) of the Judicial Code and the Emergency Code and that the specific immunity provision found in the latter applies in this instance.

Having concluded that the more specific Emergency Code prevails over the more general Judicial Code, we turn to the issue of whether the trial court erred in denying DOT's motion for summary judgment in light of the Emergency Code's willful misconduct requirement.

## II.

■ Section 7704(a) of the Emergency Code, which the Governor incorporated by reference in his January 7, 1996 Proclamation,[12] provides as follows:

*Neither the Commonwealth nor any political subdivision thereof nor other agencies nor, except in cases of willful misconduct, the agents, employees or representatives of any of them engaged in any emergency services activities,* nor, except in cases of willful misconduct or gross negligence, any individual or other person under contract with them to provide equipment or work on a cost basis to be used in disaster relief, nor, except in cases of willful misconduct or gross negligence, any person, firm, corporation or any agent or employee of any of them engaged in disaster services activities, *while complying with or attempting to comply with this part or any rule or regulation promulgated pursuant to the provisions of this part, shall be liable for the death of or any injury to persons or loss or damage to property as a result of that activity.*

35 Pa.C.S. § 7704(a) (emphasis added).

DOT asserts that when construing 7704 of the Emergency Code and the January 7, 1996 Proclamation, it is clear that DOT's employees engaged in emergency services activities, such as snow removal, are immune from civil liability *except* in cases of willful misconduct. DOT further contends that the actions of its employee, as alleged, do not constitute willful misconduct. In support of its argument, DOT cites *Renk v. City of Pittsburgh,* 537 Pa. 68, 641 A.2d 289 (1994) and *Diaz v. Houck,* 159 Pa. Cmwlth. 274, 632 A.2d 1081 (1993) where courts have interpreted what constitutes willful misconduct for local agencies or their employees.[13]

---

11. Section 7301(c) of the Emergency Code, 35 Pa.C.S. § 7301(c), in pertinent part, provides as follow:

> The state of disaster emergency shall continue until the Governor finds that the threat or danger has passed or the disaster has been dealt with to the extent that emergency conditions no longer exist and terminates the state of disaster emergency by executive order or proclamation, but no state of disaster emergency may continue for longer than 90 days unless renewed by the Governor. The General Assembly by concurrent resolution may terminate a state of disaster emergency at any time. Thereupon, the Governor shall issue an executive order or proclamation ending the state of disaster emergency....

12. Section 7301(b) of the Emergency Code provides that "the Governor may issue, amend and rescind executive orders, proclamations and regulations which shall have the force and effect of law." 35 Pa.C.S. § 7301(b). *See also Pennsylvania Department of Health v. North Hills Passavant Hosp.,* 674 A.2d 1141, 1146 (Pa.Cmwlth.1996) (holding that "an executive order authorized by statute and intended to implement or supplement that statute has the force of law.")

13. Section 8550 of what is commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. § 8550, provides as follows:

> In any action against a local agency or employee thereof for damages on account

In *Renk*, the Supreme Court considered the issue of whether indemnification by a local agency for the payment of a judgment entered against a police officer in a civil action for assault and battery and false imprisonment is prohibited in all instances under the Tort Claims Act. In determining that a police officer may be indemnified for the payment of a judgment entered in such a civil action, absent a judicial determination that the officer's acts, constituted willful misconduct, the Supreme Court noted what behavior constituted willful misconduct. The Court noted with approval our opinion in *King v. Breach*, 115 Pa.Cmwlth. 355, 540 A.2d 976 (1988) wherein we stated as follows:

> Willful misconduct, for the purpose of tort law, has been defined by our Supreme Court to mean conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied. In other words, the term "willful misconduct" is synonymous with the term "intentional tort." *See* W. Prosser, *Handbook of The Law of Torts*, 31 (4[th] ed.1971).

*Renk*, 537 Pa. at 75, 641 A.2d at 293 (quoting *King*, 540 A.2d at 981).

In *Diaz*, the appellant filed a complaint against the City of Allentown and various individuals, *inter alia*, alleging that appellees, with intentional, willful, wanton, knowing and reckless disregard of her rights and her safety, threw and detained her in an unreasonably unsafe place despite actual or constructive notice and knowledge that she had a known propensity to lose consciousness and then failed to help her when she was found unconscious lying on the jail cell's concrete floor and bleeding from the mouth. We reversed the trial court's grant of appellees' motion

for summary judgment because we concluded that appellant alleged facts which, if true, would prove that appellees deliberately disregarded her need for medical attention in violation of Section 1983 of the United States Code, 42 U.S.C. § 1983.

We did not conclude in Diaz, however, that appellees' acts of failing to monitor appellant and failing to provide her with medical assistance constituted willful misconduct. In so concluding, we noted that "in order to prove willful misconduct, it must be shown that the actor desired to bring about the result that followed, or at least it was substantially certain to follow." *Id.* 632 A.2d at 1085. We characterized this as "specific intent." We determined that

> [l]acking any evidence of any assaultive behavior by the [police] officers, such as pushing Appellant or throwing her into a jail cell, there are no facts to suggest that Appellees' specifically intended to injure Appellant by their conduct, nor were her injuries substantially certain to follow from their treatment of her. Although Appellees may have acted in deliberate disregard of her safety, "wanton conduct," *see Evans* [*v. Philadelphia Transp. Co.*, 418 Pa. 567, 212 A.2d 440 (1965)], their conduct does not evince the requisite specific intent required under our case law. Therefore, this conduct does not rise to the level of willful misconduct and does not defeat Appellees' governmental or official immunity.

*Diaz*, 632 A.2d at 1085–86.

The Zuppos contend that the facts of this case indicate that the conduct of the driver of the grader amounted to more than negligence and indicated that he either desired to bring about the result that followed, or at least was aware that it was substantially certain to follow, such that a

---

of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of section 8545

(relating to official liability in generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitations on damages) shall not apply.

desire could be implied. They point to the fact that DOT's employee had 80–100 yards of unobstructed view, that he had one and one-half to two minutes to observe the pick-up truck but continued to operate the grader without decreasing his speed and that he never attempted to circumvent the pick-up truck.

Here, as evidenced by the specific allegations set forth in paragraphs 9 and 20 of the complaint, the Zuppos did not allege that the driver of the grader had the requisite specific intent. Those allegations sound in negligence and do not include any indicia of intentional conduct.[14] In addition, there is nothing else of record to indicate that the driver had specific intent. In fact, Mrs. Zuppo testified that this was not a case where the driver of the grader was trying to hit the pick-up truck. Accordingly, we reject the Zuppos' argument that the record supports a determination that the driver's conduct amounted to more than negligence.

■ In addition, the Zuppos contend that because the grader driver's version of the events that occurred on the day of the accident differs from their own version, the trial court correctly determined that there are genuine issues of material fact in dispute. In an answer to an interrogatory, the driver stated as follows:

14. Paragraphs 9 and 20 contain identical allegations. Those allegations are as follows:

-a. Failure to have their vehicle under proper and adequate control;

-b. Operating their vehicle without due regard for the rights, safety and position of the Plaintiffs' vehicle;

-c. Operating their vehicle at an unsafe speed under the circumstances;

-d. Operating their vehicle with Plaintiffs' vehicle in full view and in such a careless and negligent manner so as to bring it into a sudden, forcible and violent collision with Plaintiffs' vehicle;

-e. Failure to properly brake their vehicle;

-f. Failure to give any warning whatsoever of the approach and intended direction of their vehicle;

-g. Failure to properly observe the roadways;

-h. Failure to exercise the degree of care which an ordinary and prudent person would have done under the circumstances;

-i. Failure to stop and shift their vehicle into a lower gear prior to colliding with Plaintiffs' vehicle;

-j. Negligently failing to turn or swerve their vehicle to avoid entering the path of the vehicle in which Plaintiff was situated;

-k. Failure to reduce the speed of their vehicle;

-l. Failure to bring their vehicle to a safe stop within the assured clear distance ahead;

-m. Failure to keep a proper lookout for Plaintiffs' vehicle;

-n. Failure to take proper and timely precautions to avoid an accident with Plaintiffs' vehicle;

-o. In then and there operating their vehicle in a reckless, erratic and negligent manner;

-p. In then and there being inattentive during the operation of their vehicle;

-q. In then and there failing to observe the presence and position of the Plaintiff's vehicle which was lawfully upon the road and in its proper lane;

-r. In then and there operating the aforesaid vehicle at an unsafe speed as to be unable to control the vehicle and causing it to strike the Plaintiffs' vehicle;

-s. In then and there failing to yield the right-of-way to the Plaintiffs' vehicle;

-t. In then and there failing to operate their vehicle with due regard to the position, rights and safety of the Plaintiffs' vehicle;

-u. In then and there failing to have said vehicle under proper and adequate control under the circumstances;

-v. In then and there failing to take the necessary and reasonable precautions under the conditions of travel then and there existing;

-w. In then and there failing to have their vehicle under proper and adequate control so that it could be readily stopped, turned aside or the speed thereof slackened on the appearance of danger;

-x. In then and there failing to keep and maintain a proper lookout for other vehicles, including the Plaintiffs' vehicle and in allowing their attention to be distracted and thereby failing to 'observe the aforesaid Plaintiffs' vehicle in sufficient time in order to avoid an accident;

-y. In then and there failing to exercise due care and caution under all of the existing circumstances;

-z. In then and there violating the Motor Vehicle Code of the Commonwealth ... as is more specifically set forth above.

(R.R. 9–10.)

I was engaged in snow removal from the berm with a grader and came up to a tree which obstructed what I was doing. I stopped the grader, got out of the grader first because a pickup truck was on the road coming in the opposite direction than I was going. I went over to the operator of the pickup truck and told him he would have to back up if I were to get around the tree and get by him. He did back up and I started to proceed, but he did not wait for me to pass by him. Instead, he started forward and tried to go past the grader. The blade of the grader made contact with the front driver's side hub cap of the pickup truck. I stopped the grader to see why the operator of the pickup truck did what he did. He said he was in a hurry to get his wife to the hospital to have a cast removed.

(R.R. 44.)

Based on the foregoing passage, the Zuppos argue that if the jury believed their version, that the driver had 80–100 yards of unobstructed view and one to two minutes to view their truck before striking it, then the jury could find that the driver acted with willful misconduct when he struck their truck with the grader. We reject the Zuppos' contention that the disputed fact is material.

▮ In order for a fact to be material, it must directly affect the disposition of the case. *Allen v. Colautti*, 53 Pa.Cmwlth. 392, 417 A.2d 1303 (1980). The disputed fact of whether the pickup truck was moving at the time of the accident is rendered immaterial by the applicability of limited immunity. In other words, the record, even when taken in the light most favorable to the Zuppos, does not establish a cause of action because there is nothing therein to abrogate immunity.

Accordingly, for the reasons stated above, we reverse the order of the trial court denying DOT's motion for summary judgment.

***ORDER***

AND NOW, this 27th day of October, 1999, the January 29, 1999 order of the Court of Common Pleas of Susquehanna County is hereby reversed.