IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kristin Claypoole and Melissa Knepp as Co-Administrators of the Estate of Glenn M. Noel, Appellants | : : : : | |
| | : | |
| v. | : | No. 196 C.D. 2025 |
| | : | |
| Altoona-Logan Township Mobile Medical Emergency Department Authority d/b/a AMED | : : : | Argued: March 3, 2026 |

BEFORE:  HONORABLE PATRICIA A. McCULLOUGH, Judge
         HONORABLE STELLA M. TSAI, Judge
         HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE McCULLOUGH                    FILED: April 23, 2026

Kristin Claypoole and Melissa Knepp as Co-Administrators of the Estate of Glenn M. Noel (Decedent) (Estate) appeal from the February 3, 2025 order of the Court of Common Pleas of Blair County (trial court), which sustained preliminary objections filed by Altoona-Logan Township Mobile Medical Emergency Department Authority d/b/a AMED (AMED) and dismissed the Estate's complaint (Complaint) with prejudice. In the Complaint, the Estate asserted negligence, gross negligence, and wrongful death claims against AMED related to emergency medical services (EMS) it rendered to Decedent on October 25, 2022.

In sustaining AMED's preliminary objections, the trial court concluded that the Estate's claims were barred by the governmental immunity provisions of the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541, 8542(b) (PSTCA). In this Court, the Estate argues that, notwithstanding the applicability of the PSTCA, Section 8151(2) of the Emergency Medical Services System Act (EMSSA), 35 Pa.C.S. §

8151(2), provides an independent exception to immunity where the claims brought against a local agency relate to the provision of EMS care and assert grossly negligent conduct.

Upon review, we affirm.

## I.     Background and Procedural History

### A.     Statutory Framework

Because the issues in this case require us to interpret and consider the interplay between the PSTCA and the EMSSA, we begin by reviewing the purpose and structure of both.

Generally speaking, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa.C.S. § 2310 (citing Pa. Const. art. I, § 11); *see also id.* ("When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 . . . or 62 . . .[,] unless otherwise specifically authorized by statute.")  In this vein, the PSTCA was enacted in 1980 with an "overall purpose . . . to limit governmental exposure to tort liability for its acts." *Sphere Drake Insurance Co. v. Philadelphia Gas Works*, 782 A.2d 510, 515 (Pa. 2001).  *See also Dixon v. Cameron County School District*, 802 A.2d 696, 700 (Pa. Cmwlth. 2002) (the PSTCA was enacted to restore, with certain exceptions, the doctrine of sovereign immunity to the Commonwealth and its political subdivisions by way of "sovereign, governmental, and official immunity, and by defining the exceptions to that immunity in strict and narrow terms").

2

As to local agencies, the PSTCA provides a comprehensive immunity scheme and establishes an absolute and non-waivable immunity defense, subject to nine strictly construed exceptions. *McShea v. City of Philadelphia*, 995 A.2d 334, 341 (Pa. 2010); *Lockwood v. City of Pittsburgh*, 751 A.2d 1136, 1139 (Pa. 2000). Section 8541 of the PSTCA provides that, "*[e]xcept as otherwise provided in this subchapter*, no local agency[1] shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. Section 8542(a) of the PSTCA then sets forth the prerequisites that must be established before a local agency may be liable for damages in tort, providing as follows:

> **(a) Liability imposed.**--A local agency shall be liable for damages on account of an injury to a person or property **within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b)**:
>
> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under [S]ection 8541 (relating to governmental immunity generally) or [S]ection 8546 (relating to defense of official immunity); and
>
> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, **"negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.**

---

[1] "Local agency" is defined in Section 8501 of the Judicial Code as "[a] government unit other than the Commonwealth government." 42 Pa.C.S. § 8501.

42 Pa.C.S. § 8542(a) (emphasis provided). Subsection 8542(b)(1)-(9) sets forth nine categories of circumstances in which a local agency may be liable for damages, which include (1) vehicle liability; (2) the care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) the care, custody, or control of animals; and (9) sexual abuse. 42 Pa.C.S. § 8542(b)(1)-(9). Thus, pursuant to the express language of Sections 8541 and 8542 of the PSTCA, a local agency may be held liable for damages resulting from an injury to person or property *only if* (1) the damages are otherwise recoverable pursuant to common law or statute creating a cause of action; (2) the injury is caused by negligent acts of the local agency or its employees acting within the scope of their employment; *and* (3) one of the nine enumerated exceptions in Section 8542(b) applies.

The EMSSA, enacted in 2009,[2] is a comprehensive statute that regulates the provision of EMS in Pennsylvania. *See* 35 Pa.C.S. § 8102 ("Declaration of Policy"). It designates EMS as an essential public service, establishes the public interest of assuring "that there are high quality and coordinated emergency and urgent medical services readily available to the residents of this Commonwealth to prevent premature death and reduce suffering and disability which arise from severe illness and injury," and declares that this public interest "is best achieved through a regulated and coordinated emergency medical services program." *Id.* § 8102(1)-(3). Among other

---

[2] The EMSSA repealed and replaced the former Emergency Medical Services Act (EMSA), which likewise prohibited civil liability against EMS providers arising out of the provision of EMS care except in instances of "gross or willful negligence." *See former* Section 11(j)(2)a of the EMSA, Act of July 3, 1985, P.L. 164, *former* 35 P.S. § 6931(j)(2).

things, the EMSSA establishes reporting requirements for EMS agencies[3] (§ 8106), establishes an EMS state advisory board (§ 8108), provides for the creation of regional EMS councils (§ 8109), directs the Department of Health to prepare and implement a statewide EMS system plan (§ 8111), establishes the requirements for EMS agency licensing (§ 8129), and requires the Department of Health to promulgate regulations governing the operation of EMS agencies (§ 8129).  As to its interpretation, the EMSSA mandates that it "shall be liberally construed to establish and maintain an effective and efficient emergency medical services system which is accessible on a uniform basis to residents of this Commonwealth and visitors to this Commonwealth." 35 Pa.C.S. § 8102(8).

Pertinent here, Section 8151 of Subchapter C of the EMSSA ("Miscellaneous Provisions") provides for certain "[l]imitations on liability."  It states, in relevant part, as follows:

> . . . .
>
> (2) No EMS agency, EMS agency medical director or EMS provider[4] who in good faith attempts to render or facilitate emergency medical care authorized by this chapter shall be liable for civil damages as a result of an act or omission, **absent a showing of gross negligence or willful misconduct.** This paragraph shall also apply to students enrolled in approved courses of instruction and supervised pursuant to rules and regulations.
>
> . . . .

---

[3] "EMS agency" is defined, in pertinent part, as "[a]n entity that engages in the business or service of providing emergency medical services to patients within this Commonwealth by operating" . . . "[a]n ambulance."  35 Pa.C.S. § 8103.

[4] "EMS provider" includes an emergency medical responder, a paramedic, a prehospital nurse or physician, and similar individuals.  35 Pa.C.S. § 8103.

42 Pa.C.S. § 8151(2).

## B. Proceedings Below

The Estate filed the Complaint on October 15, 2024, alleging as follows. On October 25, 2022, while riding a motorcycle, Decedent collided with another vehicle. (Complaint, ¶¶ 16-18.) AMED[5] was notified of the accident at 6:20 a.m., was dispatched at 6:23 a.m., and arrived on scene at 6:29 a.m. *Id.* ¶¶ 19-22. At 6:49 a.m., AMED transported Decedent to Conemaugh Nason Medical Center Emergency Room (Conemaugh Nason), located approximately seven minutes from the accident scene. Conemaugh Nason is not a designated trauma center. *Id.* ¶¶ 39, 41-42. Another hospital, UPMC Altoona, was located approximately 19 minutes from the accident scene. UPMC Altoona is a Level II trauma center. *Id.* ¶¶ 43-44.

After approximately 45 minutes, Conemaugh Nason staff contacted air ambulance to arrange for Decedent's transfer to the nearest trauma center. The air ambulance was unavailable due to weather conditions. *Id.* ¶¶ 49-50. Decedent waited at Conemaugh Nason for a total of approximately 3 1/2 hours before being transferred by ground transport to UPMC Altoona. *Id.* ¶ 53. Care administered at UPMC Altoona was unsuccessful, and Decedent died at 2:04 p.m. on October 26, 2022, from traumatic brain injury. *Id.* ¶¶ 56-59.

The Complaint asserts claims for negligence/gross negligence (survival) (Count I) and wrongful death (Count II) against AMED, chiefly alleging that AMED's failure to immediately transport Decedent to a Level I or II trauma center was "negligent, grossly negligent, and reckless." *Id.* ¶¶ 63-65, 68-70.

---

[5] The Estate alleges that AMED is an EMS agency that provides EMS as defined in Section 8103 of the EMSSA and that "this action arises pursuant to the EMSSA." (Complaint, ¶ 14.) The Estate further alleges that AMED is a "municipal authority." *Id.* ¶ 10.

AMED filed a preliminary objection on January 10, 2025, demurring to both Counts of the Complaint on the ground that it is immune from suit pursuant to Sections 8541 and 8542(a) and (b) of the PSTCA. The trial court sustained the preliminary objection and dismissed the Complaint with prejudice. The trial court acknowledged that the parties did not dispute that (1) AMED was a "local agency" afforded immunity under the PSTCA; and (2) that none of the exceptions to immunity in Section 8542(b) applied. The trial court concluded that the language of Section 8151(2) of the EMSSA permitting claims for gross negligence against EMS providers was limited and qualified by Sections 8541 and 8542 of the PSTCA where claims are asserted against a local agency EMS provider. In that circumstance, the trial court concluded, a pertinent exception to immunity must apply for *any* claim against the local agency EMS provider to remain viable. (Trial Ct. Op., 2/3/2025, at 7-8.)

The Estate now appeals to this Court.

## II. Issues

The Estate presents two questions for our review, which in essence are two parts of one overarching question: whether the trial court erred in concluding that the Estate's gross negligence claims are barred by Sections 8541 and 8542 of the PSTCA.[6]

---

[6] The affirmative defense of immunity from suit ordinarily must be pled as new matter. Pa.R.Civ.P. 1030. Nevertheless, immunity is an unwaivable defense and may be addressed via preliminary objection if its applicability is clear from the face of the complaint and the plaintiff has not objected. *Mazur v. Cuthbert*, 186 A.3d 490, 497-98 (Pa. Cmwlth. 2018); *Williams v. Philadelphia Housing Authority*, 873 A.2d 81, 84 n.2 (Pa. Cmwlth. 2005). Here, the Estate did not object to the trial court's consideration of the immunity defense via preliminary objection, and the material facts governing whether immunity applies are undisputed and clear on the face of the Complaint. The trial court therefore properly considered it.

Further, where a trial court dismisses a complaint by sustaining preliminary objections, our review is limited to determining whether the trial court committed legal error or abused its discretion. **(Footnote continued on next page…)**

7

## III. Discussion

### A. The Parties' Arguments

The Estate does not dispute that the PSTCA applies to AMED and renders it generally immune from suit for damages to persons or property. The Estate further acknowledges that none of the exceptions to immunity in Section 8542(b) of the PSTCA apply in these circumstances. The Estate nevertheless argues that Section 8151(2) of the EMSSA provides an additional, independent exception to immunity that allows for liability against local agencies where, as here, a plaintiff asserts that the local agency was grossly negligent in providing EMS care. (Estate Br. at 4, 10-18.) More specifically, the Estate argues that Sections 8541 and 8542 of the PSTCA and Section 8151(2) of the EMSSA must be read *in pari materia* pursuant to Section 1932(a) and (b) of the Statutory Construction Act of 1972 (Statutory Construction Act), 42 Pa.C.S. § 1932(a), (b),[7] to permit gross negligence claims against local agencies providing EMS care. (Estate Br. at 11-12.)

The Estate also argues, somewhat paradoxically, that the PSTCA and EMSSA are "irreconcilable" here because application of Sections 8541 and 8542 of

*Minor v. Kraynak*, 155 A.3d 114, 121 (Pa. Cmwlth. 2017). Further, where preliminary objections present questions of law, including questions as to whether claims are barred by immunity and questions involving statutory interpretation, our standard of review is *de novo* and our scope of review is plenary. *Russo v. Allegheny County*, 125 A.3d 113, 116 n.5 (Pa. Cmwlth. 2015) (citing *Feldman v. Hoffman*, 107 A.3d 821, 826 n.7 (Pa. Cmwlth. 2014), and *Bender v. Pennsylvania Insurance Department*, 893 A.2d 161, 162 (Pa. Cmwlth. 2006)).

[7] Section 1932(a) and (b) of the Statutory Construction Act provides:

(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

(b) Statutes in pari materia shall be construed together, if possible, as one statute.

1 Pa.C.S. § 1932(a), (b).

the PSTCA would preclude the Estate's gross negligence claims, and Section 8151(2) of the EMSSA would permit them. (Estate Br. at 13.) Thus, the Estate contends that, pursuant to Section 1936 of the Statutory Construction Act, 1 Pa.C.S. 1936,[8] Section 8151(2) of the EMSSA should apply as the later-enacted provision. *Id.* at 13-14. The Estate maintains that its interpretations of the PSTCA and EMSSA are supported by the Pennsylvania Supreme Court's decision in *Sherk v. County of Dauphin*, 614 A.2d 226 (Pa. 1992), this Court's decision in *Zuppo v. Department of Transportation*, 739 A.2d 1148 (Pa. Cmwlth. 1999), and the Supreme Court of Michigan's decision in *Malcolm v. City of East Detroit*, 468 N.W.2d 479 (Mich. 1991).

AMED argues in response that the PSTCA applies to shield local agencies from liability in all circumstances, including where gross negligence or willful misconduct is asserted, unless one of the exceptions enumerated in Section 8542(b) applies. AMED contends that Section 8151(2) of the EMSSA does not apply where the EMS agency is a local agency, which interpretation it contends is supported by the Supreme Court's decision in *Christy v. Cranberry Volunteer Ambulance Corps, Inc.*, 856 A.2d 43 (Pa. 2004), and this Court's decision in *Flood v. Silfies*, 933 A.2d 1072 (Pa. Cmwlth. 2007). AMED asserts that the Estate's reading of the PSTCA and EMSSA results in an end-run around the PSTCA's clear language precluding all liability, including that for gross negligence and willful misconduct, against all local agencies *unless* one of the enumerated exceptions applies. (AMED Br. at 16-17.) AMED argues that the two statutes cannot be read *in pari materia* because they do not

---

[8] Section 1936 of the Statutory Construction Act provides that, "whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail." 1 Pa.C.S. § 1936.

necessarily relate to the same, or same class of, persons or things. (AMED Br. at 18); *see also* 1 Pa.C.S. § 1932(a).

Rather, AMED argues that the two statutes should be read separately and consistently with each other. AMED points out that the EMSSA is part of a much larger, general statute regulating all aspects of the provision of EMS care by any provider, including various types of non-agency entities and individuals. Its liability limitation likewise is general and applies to all EMS providers. By contrast, the PSTCA is aimed at limiting liability of local agencies and applies only to them. Thus, according to AMED, reading the two statutes according to their own terms results in a general limitation of liability against all EMS providers except in cases of gross negligence or willful misconduct, unless the EMS provider is a local agency. In that case, all liability, including that resulting from gross negligence or willful misconduct, is precluded *unless* one of the enumerated exceptions in Section 8542(b) applies. (AMED Br. at 25-26.)

## B.    Analysis

Because the questions before us require statutory interpretation, we begin by reviewing the following principles that guide our analysis:

> As in all matters of statutory interpretation, the [Statutory Construction Act] guides our analysis. The Statutory Construction Act provides that the object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). Generally, the best expression of the General Assembly's intent "is found in the statute's plain language." *Commonwealth v. Howard*, [668] Pa. [142], 257 A.3d 1217, 1222 (2021). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). Moreover, "we should not insert words into a statute that are plainly not there." *Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)*, 616 Pa. 592, 52

10

A.3d 241, 245 (2012). Only in instances of ambiguous statutory language "may courts consider statutory factors to discern legislative intent." *Howard*, 257 A.3d at 1222. Additionally, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," though "technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in [the Statutory Construction Act] shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa. C.S. § 1903(a). "We also presume that 'the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable,' and that 'the General Assembly intends the entire statute to be effective and certain.' " *Berner v. Montour Twp. Zoning Hearing Bd.*, 655 Pa. 137, 217 A.3d 238, 245 (2019) (quoting 1 Pa. C.S. § 1922(1)-(2)).

*Commonwealth v. Coleman*, 285 A.3d 599, 605 (Pa. 2022) (some editing omitted). Further, the Pennsylvania Supreme Court consistently has held that "where the General Assembly intends to provide exceptions to immunity, such exceptions must be specifically and explicitly expressed." *U.S. Venture, Inc. v. Commonwealth*, 255 A.3d 321, 337 (Pa. 2021) (citations and quotations omitted). Any exceptions to immunity are to be "narrowly construed," and "the General Assembly can correct any misinterpretation of the immunity provisions by amending the statute so as to explicitly waive immunity." *Id*. (citation and quotations omitted).

Here, it is undisputed that AMED is a local agency[9] to which the PSTCA applies. Thus, pursuant to Sections 8541 and 8542 of the PSTCA, AMED is absolutely

---

[9] Even if AMED's status as a local agency were disputed, it appears to satisfy the test set forth by our Supreme Court in *Christy*. Under *Christy*, to be a "local agency" for purposes of the PSTCA, an ambulance service must be a non-profit corporation created by a political subdivision for the purpose of carrying out a civic or political function of the municipality. 856 A.2d at 52-53. In its preliminary objections, AMED alleged, with supporting public documentation, that AMED is a municipal authority created by the City of Altoona and the Township of Logan "to provide ambulance equipment and facilities and to furnish ambulance service to the inhabitants of the City of Altoona **(Footnote continued on next page…)**

11

immune from liability for damages resulting from injury to persons or property unless all of the prerequisites for liability set forth in the PSTCA are satisfied, including that at least one of Section 8542(b)'s nine exceptions applies. Because it also is undisputed that none of those exceptions apply here, we must determine whether, as the Estate argues, the General Assembly specifically intended to abrogate immunity for local agencies via Section 8151(2) of the EMSSA and permit claims for gross negligence or willful misconduct arising out of the provision of EMS care. *See Doe v. Franklin County*, 174 A.3d 593, 605 (Pa. 2017). We conclude that it did not.

Section 8541 of the PSTCA provides that, "except as otherwise provided in **this subchapter, *no* local agency shall be liable for *any* damages on account of *any* injury to a person or property** . . . ." 42 Pa.C.S. § 8541 (emphasis provided). Thus, Section 8541 is a categorical immunity provision applicable specifically and only to local agencies, and it prohibits all liability for damages caused by injury to persons or property unless otherwise authorized in Title 42, Part VII, Chapter 85, Subchapter C of the Judicial Code.[10] Section 8542(a) permits such liability *only if* three prerequisites are established: (1) absent immunity, the damages would be recoverable under common law or statute; (2) the injury was caused by the negligent acts (but *not* criminal conduct, fraud, malicious acts, or willful misconduct), of the local agency or its employee; and (3) one of the exceptions in Subsection 8542(b) applies. 42 Pa.C.S. § 8542(a)(1)-(2), (b). These prerequisites for recovering damages for injury to persons

_____

and Township of Logan, and to the inhabitants of such adjoining political subdivisions or areas as may desire such service." (Reproduced Record (R.R.) at 0022-23, 36, 38.)

[10] Subchapter C of Chapter 85 contains other immunity-related provisions that govern official immunity and its contours, *see* 42 Pa.C.S. §§ 8545, 8546, limitations on damages, *see* 42 Pa.C.S. §§ 8549, 8553, and exceptions for willful misconduct (which do not apply to governmental immunity under Section 8541), *see* 42 Pa.C.S. § 8550.

or property apply to all such claims against local agencies, and there are no exceptions for EMS care.

The EMSSA, by contrast, is a comprehensive statute governing all aspects of EMS care rendered by all EMS agencies and providers in the Commonwealth. Its explicit purpose is to ensure that there are "high quality and coordinated emergency and urgent medical services readily available to the residents of this Commonwealth," and it must "be liberally construed to establish and maintain an effective and efficient emergency medical services system which is accessible on a uniform basis to residents of this Commonwealth and visitors to this Commonwealth." 35 Pa.C.S. § 8102(2), (8). The EMSSA was not enacted to address liability, and it plainly does not contain an express and comprehensive scheme to authorize local agency liability for damages in derogation of Sections 8541 and 8542 of the PSTCA. *Cf. Hidden Creek L.P. v. Lower Salford Township Authority*, 129 A.3d 602, 612 (Pa. Cmwlth. 2015) (the General Assembly, via Section 5607 of the Municipal Authorities Act, 53 Pa.C.S. § 5607, clearly intended to create "a targeted form of accountability resting outside the scope of governmental immunity"; Section 5607 explicitly authorizes suit against a municipal authority in the court of common pleas).

Instead, and pertinent here, a single miscellaneous provision of the EMSSA, Section 8151(2), prohibits the liability of EMS agencies related to the good faith rendering of EMS care *unless* gross negligence or willful misconduct is established. 35 Pa.C.S. § 8151(2). Section 8151(2), by its plain language, is not a claim-creating provision; it is a liability-prohibiting provision with two narrow exceptions. Nowhere does it state that it is intended to add a tenth exception to immunity *outside of* the PSTCA, and it does not eliminate, replace, or even mention the other prerequisites for liability contained in Section 8542(a).

13

Moreover, although the EMSSA's definition of "EMS agency" would on its face include local agencies providing EMS care, the EMSSA does not anywhere expressly address liability of local agencies, and it contains no express language indicating that it *authorizes* liability against local agencies notwithstanding any other provision of law, including the PSTCA.[11]  We simply cannot conclude that the mere failure of the EMSSA to *exclude* local agencies from the definition of "EMS agency" evidences a clear intent of the General Assembly to abrogate local agency immunity in Section 8151(2) of the EMSSA.  *See Doe*, 174 A.3d at 608 (the General Assembly did not intend to abrogate high official immunity for sheriffs via "general, undefined" terms of "person" or "local governmental agency" included in Section 6111(i) of the Pennsylvania Uniform Firearms Act, 18 Pa.C.S. § 6111(i), which authorizes suit for civil damages arising out of disclosure of confidential information).

In sum, we cannot conclude that the General Assembly intended Section 8151(2) to override the clear language in Sections 8541 and 8542 of the PSTCA, which provide blanket and absolute immunity for local agencies save in nine specifically-delineated circumstances found *only* in the PSTCA.  There simply is no evidence in the language of Section 8151(2) or elsewhere in the EMSSA indicating that the General Assembly intended to "otherwise specifically authorize" claims against local agencies for gross negligence and willful misconduct notwithstanding the PSTCA's immunity provisions barring those claims.  *See* 1 Pa.C.S. § 2310.[12]

---

[11] The EMSSA does preclude, however, without exception, all claims for damages "arising out of an EMS provider" against (1) the Department of Health and its officials and employees, (2) any regional EMS council and its officials and employees, and (3) the Commonwealth EMS Director. 35 Pa.C.S. § 8151(6).

[12]  In creating new exceptions to local agency immunity, the General Assembly historically has treated as exclusive those contained in Section 8542(b).  For example, in 2019, the General **(Footnote continued on next page…)**

14

Further, and as AMED has argued, prior decisions of both this Court and our Supreme Court have assumed, if not compelled, the above interpretation. In *Christy,* the plaintiff heart attack patient was transported to a hospital by the defendant ambulance service. The plaintiff later filed suit against the ambulance service alleging gross negligence in failing to administer nitroglycerine during the trip to the hospital. 856 A.2d at 44-45. Although the ambulance service argued that the claims were barred by Section 6931(j)(2) of the now-repealed EMSA, the case proceeded to trial with a jury finding the ambulance service grossly negligent. *Id.* at 45. After a retrial on unrelated grounds, the ambulance service again was found by a jury to be grossly negligent. *Id.* On appeal to this Court, the ambulance service argued that it was immune from suit pursuant to the PSTCA. This Court disagreed, concluding without factual development that the ambulance service was not a local agency and, accordingly, that the EMSA, not the PSTCA, controlled. *Id.* at 46, 50.

The Supreme Court vacated and remanded for a factual determination of whether the defendant ambulance service was a local agency, *i.e.*, whether it was a municipal authority created by Cranberry Township and over which the Township exercised control for the purpose of carrying out a civic or political function of the Township. *Id.* at 53-54. The Court in *Christy* specified that remand was necessary so that the trial court could assess whether the ambulance service was "a local agency for purposes of the [PSTCA], . . . and, hence, immune from tort liability." *Id.* at 53. Although the Supreme Court in *Christy* did not specifically rule that the PSTCA applied, its remand to the trial court would be futile if the "local agency" designation

Assembly amended Section 8542(b) to add a ninth exception for "sexual abuse." *See* the Act of November 26, 2019, P.L. 641; 42 Pa.C.S. § 8542(b)(9). The General Assembly generally has not created exceptions to local agency immunity outside of the PSTCA, and we discern no indication that it intended to do so via Section 8151(2) of the EMSSA.

15

was not controlling. Essential to the *Christy* Court's ruling was the principle that an ambulance service's status as a local agency is determinative on the question of whether it is immune from liability under the PSTCA or, conversely, not immune under the EMSA; in other words, the pleading of gross negligence, where a local agency is sued, is irrelevant to whether it is immune.

This Court assumed the same principle in *Flood v. Silfies*, where the plaintiffs sued a volunteer fire company and two of its emergency medical technicians (EMTs) for allegedly negligent medical care. 933 A.2d at 1073. The defendants ultimately moved for summary judgment on the grounds that (1) they were immune from liability under the PSTCA, and (2) the EMTs also were immune under the EMSA because the plaintiffs did not plead gross negligence. *Id.*[13] The trial court granted summary judgment on the sole ground that all of the defendants were immune under the PSTCA. *Id.*

We affirmed, concluding that no genuine issues of fact existed as to whether the defendant volunteer fire company was a local agency protected from immunity by the PSTCA. As a result, we also concluded that all of the defendants were immune from liability and that the trial court properly granted summary judgment in their favor. *Id.* at 1077-78. As in *Christy*, essential to our decision in *Flood* was the principle that an entity's status as a local agency under the PSTCA is controlling as to whether it is liable for damages arising out of the provision of EMS care. Although we did not address whether the EMTs also were entitled to immunity under the EMSA,

---

[13] The EMTs also argued that they were immune under Section 8332(a) of the Judicial Code, 42 Pa.C.S. § 8332(a), which affords immunity to emergency response providers and bystander "Good Samaritans" from claims arising from their provision of emergency care unless intentional or grossly negligent conduct is established.

16

the question ultimately was irrelevant to our decision because, even if we had, immunity under the PSTCA still would apply. *Id.* at 1078.

In arguing that the PSTCA and EMSSA must be read *in pari materia* to create a new gross negligence exception to immunity, the Estate relies on several distinguishable cases. It first cites to *Sherk*, 614 A.2d 226, in which the Supreme Court of Pennsylvania interpreted a specific "medical-professional liability" exception to sovereign immunity, 42 Pa.C.S. § 8522(b)(2),[14] *in pari materia* with Section 114 of the Mental Health Procedures Act,[15] 50 P.S. § 7114, which provides immunity to certain mental healthcare providers absent a showing of willful misconduct or gross negligence. The Court in *Sherk*, relying on its prior decision in *Goryeb v. Department of Public Welfare*, 614 A.2d 226 (Pa. 1990), ruled that the two provisions must be read *in pari materia* pursuant to Section 1932 of the Statutory Construction Act to except from sovereign immunity claims for damages arising out of mental health treatment where gross negligence or willful misconduct is established. 614 A.2d. at 231-33. The Court concluded that the two provisions were not inconsistent, related to the same class of persons or things, and functioned to waive sovereign immunity in those limited circumstances. *Id.*

*Sherk* does not require a contrary result for one obvious reason: Section 8522(b)(2) of the Judicial Code specifically creates a "medical-professional liability" exception to immunity through which Section 114 of the Mental Health Procedures

---

[14] Section 8522(b)(2) waives sovereign immunity for "acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel." 42 Pa.C.S. § 8522(b)(2).

[15] Act of July 9, 1976, P.L. 817, *as amended*.

Act could be applied to allow claims for gross negligence or willful misconduct. Such is not the case here.

The Estate also relies on *Zuppo*, 739 A.2d 1148, in which this Court applied Section 1933 of the Statutory Construction Act to conclude that Section 7704(a) of the Emergency Management Services Code (Emergency Code), 35 Pa.C.S. § 7704(a),[16] created an exception to sovereign immunity for willful misconduct during declared disaster emergencies in addition to the nine exceptions to immunity listed in Section 8522(b) of the Judicial Code, 42 Pa.C.S. § 8522(b). We noted that, because the General Assembly specifically retained sovereign immunity for Commonwealth parties *unless otherwise waived by statute*, it must have intended for Section 7704(a) of the Emergency Code to operate as a limited, independent waiver of immunity notwithstanding the fact that Section 8522(b) did not contain such an exception. *Zuppo*, 739 A.2d at 1151-52 (citing 1 Pa.C.S. § 2310). We reasoned:

> Here, Section 7704(a) of the Emergency Code very specifically applies to situations where Commonwealth employees are engaged in emergency services activities. 35 Pa.C.S. § 7704(a). . . . In comparison, the nine narrow exceptions set forth in Section 8522(b) of the Judicial Code, though subject to strict construction, are somewhat more general and are not limited to a period during which the Governor issues a proclamation. They include 1) vehicle liability; 2) medical-professional liability; 3) the care, custody or control of personal property; 4) Commonwealth real estate, highways and sidewalks; 5) potholes and other dangerous conditions; 6) the care, custody or control of

---

[16] At the time of the incident in *Zuppo*, Section 7704(a) provided immunity for Commonwealth parties while engaged in emergency services activities, except for cases of willful misconduct. *See Zuppo*, 739 A.2d at 1153 (citing *former* Section 7704(a)). Section 7704(a) was amended in 2020 to add additional exceptions for gross negligence, recklessness, and bad faith. 42 Pa.C.S. § 7704(a).

animals; 7) liquor store sales; 8) natural guard activities; and 9) toxoids and vaccines.

Section 7704(a) of the Emergency Code is highly specific. It provides that neither the Commonwealth nor any of its employees shall be liable when engaged in emergency services activities, except in cases of willful misconduct. In addition, a proclamation of the Governor activates the immunity-waiver provision for only a limited duration of time. Therefore, we conclude that we can give effect to both Section 8522(b) of the Judicial Code and the Emergency Code and that the specific immunity provision found in the latter applies in this instance.

*Id.* at 1152-53 (footnotes omitted).

*Zuppo* is distinguishable because, quite plainly, the waiver of immunity for willful misconduct in Section 7704 is express and limited in both scope and duration, and by its language it manifests the intent of the General Assembly to waive immunity where there is willful misconduct in the performance of emergency services. It therefore is not inconsistent with Section 8522(b) of the Judicial Code and operates as an additional exception to immunity. Here, by contrast, Sections 8541 and 8542 of the PSTCA do not contemplate exceptions to damages immunity found outside of Section 8542(b), and Section 8151(2) of the EMSSA contains no express waiver of immunity or other language evidencing the General Assembly's clear intent to subject local agencies to damages liability.[17]

---

[17] The Estate also relies on the decision of the Supreme Court of Michigan in *Malcolm*, 468 N.W.2d 479. We are not bound by the decisions of other state courts, and, in any event, the decision in *Malcolm* is distinguishable. The emergency medical services statute at issue in *Malcolm* defined the "persons" covered by the statute to include government entities. Accordingly, the court in *Malcolm* concluded that the legislature "clearly meant to single out certain governmental employees and their governmental employers for standards of immunity different from those extant in the more comprehensive [governmental tort liability act]. 468 N.W.2d at 482. By contrast, the EMSSA does not expressly include local agencies in its definition of "EMS agency" and contains no language

**(Footnote continued on next page…)**

19

## IV.  Conclusion

For these reasons, we conclude that Sections 8541 and 8542 of the PSTCA, and not Section 8151(2) of the EMSSA, governs whether a local agency ambulance service is immune from suit for damages arising out of its provision of EMS care.  Given the lack of any dispute that AMED is a local agency under the PSTCA and that none of the exceptions to immunity in Section 8542(b) apply, the trial court did not err in sustaining AMED's preliminary objections and dismissing the Complaint with prejudice.  We accordingly affirm its order.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Wolf did not participate in the decision of this case.

---

suggesting that the General Assembly intended Section 8151(2) to "single out" local agency EMS providers to be subject to gross negligence liability.

The Estate lastly relies on a one-sentence order entered by the Court of Common Pleas of Allegheny County overruling preliminary objections without further explanation or comment.  (R.R. at 0086.)  We cannot discern any rationale from that order, and a court of common pleas decision is not binding in any event.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristin Claypoole and Melissa   :
Knepp as Co-Administrators of the   :
Estate of Glenn M. Noel,   :
     Appellants   :
        :
    v.     :   No. 196 C.D. 2025
        :
Altoona-Logan Township Mobile   :
Medical Emergency Department   :
Authority d/b/a AMED   :

## ***ORDER***

    AND NOW, this 23rd day of April, 2026, the February 3, 2025 order of the Court of Common Pleas of Blair County is hereby AFFIRMED.

           _____
           PATRICIA A. McCULLOUGH, Judge